FREDERICKA HOMBERG WICKER, Judge.
 

 |2In this criminal proceeding, defendant/appellant, Joseph Wilson, appeals his possession of cocaine conviction and his enhanced habitual offender 10-year hard labor sentence without benefit of probation or suspension of sentence.
 
 [1]
 
 Mr. Wilson assigns two errors: (1) The trial court erred in denying his motion to suppress evidence. (2) The trial court imposed an excessive sentence. For the reasons that follow, we affirm.
 

 Procedural History
 

 Mr. Wilson was charged by bill of information with possession of cocaine, La.R.S. 40:967(C), allegedly occurring on October 23, 2006. Mr. Wilson filed a pretrial motion to suppress evidence, which the trial
 
 *1151
 
 judge denied. Thereafter, a six-person jury found Mr. Wilson guilty as charged. About a month after conviction, the trial court sentenced Mr. Wilson to imprisonment at hard labor for five years. After sentencing, the court informed Mr. Wilson that the state intended | sto file a habitual offender bill. Then, the trial court set the habitual offender hearing a few weeks later. After several continuances, the hearing was set for August 8, 2008. On that date, the state filed a habitual offender bill of information alleging that Mr. Wilson was a fourth felony offender. However, the state reduced the fourth felony offender bill to a third felony offender bill based on a plea agreement. Mr. Wilson then stipulated to being a third felony offender, acknowledging under oath and in his written contemporaneously-signed waiver form that among other things, he was advised of the following: the allegations in the bill; his right to a hearing and to force the state to prove the allegations; and his right to remain silent. Mr. Wilson acknowledged that he would receive a 10-year sentence. The trial judge accepted the stipulation, vacated the original sentence, and imposed the negotiated 10-year sentence. This out-of-time appeal followed.
 

 Facts
 

 Officer Joseph Lovett, a Kenner police officer, testified that on October 23, 2006, he arrested Mr. Wilson on an outstanding attachment after the officer responded to a call about a suspicious person whose clothing matched Mr. Wilson’s clothing. Officer Lovett further testified that after arriving at Kenner police lockup, he noticed Mr. Wilson was attempting to hide a small plastic bag in his left hand, which the officer removed and had tested. The field test of the white powdered substance in the bag was positive for cocaine.
 

 Daniel Waguespack, a forensic scientist for the Jefferson Parish Crime Laboratory, testified as an expert in narcotics examination. He tested the evidence in this case. The powdered substance tested positive for cocaine.
 

 Defense counsel presented testimony from Shannon Mitchell, Mr. Wilson’s girlfriend, in an attempt to discredit Officer Lovett’s testimony that the bag of cocaine was on Mr. Wilson’s person. Ms. Mitchell testified that she was talking [¿with Mr. Wilson outside of Burger King when six or seven police officers arrived on the scene and subsequently placed him in handcuffs. Ms. Mitchell testified that police officers searched Mr. Mitchell at the scene and the search consisted of a pat down and a turning out of Mr. Mitchell’s pockets. Also, Ms. Mitchell stated that she was allowed to go into Mr. Wilson’s pockets to retrieve her car keys and cigarettes before Mr. Wilson was taken to jail. According to Ms. Mitchell, she did not place anything in Mr. Mitchell’s pockets.
 

 On the other hand, Officer Lovett testified that his initial search at the scene was a pat down for weapons rather than a thorough search. He explained that at booking officers undertake a thorough search. Based on his police experience, arrestees frequently conceal contraband prior to booking. He also testified that on the date of the arrest and prior to placing Mr. Wilson in the vehicle, he checked the vehicle to make certain that the prior ar-restee had left nothing there. He then placed Mr. Wilson, who was handcuffed behind his back, in the vehicle. Upon escorting Mr. Wilson for booking, he observed that one of Mr. Wilson’s hands was clenched and the other one was open. He saw that Mr. Wilson had a small plastic bag in one hand that he placed in his front left pants pocket. Upon arrival at booking, Officer Lovett took the bag from the pocket for testing. Officer Lovett denied having a personal vendetta against Mr. Wilson.
 

 
 *1152
 
 After considering the evidence, the jury found Mr. Mitchell guilty as charged. Suppression
 

 The Hearing
 

 Officer Lovett was the sole witness to testify at the heai'ing. He testified that on the date of the arrest, while patrolling in his unit, he received a “suspicious 1Bperson call.” Based on the call, he drove to the Burger King on Veterans. He parked his police unit at a nearby parking lot and walked up to Mr. Wilson, who was out in the front of Burger King speaking with a Burger King employee. Mr. Wilson fit the caller’s description of the suspicious person. Meanwhile, another police officer pulled up to the scene. The two officers interviewed Mr. Wilson. Officer Lovett patted Mr. Wilson down because he fit the caller’s description. The officer wanted to make certain that Mr. Wilson did not have any weapons. He explained to Mr. Wilson that they were patting him down for officer safety to see if he had any weapons on him. Mr. Wilson complied with Officer Lovett’s instruction to put his hands up while Officer Lovett quickly patted him down. According to Officer Lovett, Mr. Wilson did not have anything in his hands and the officer did not feel anything during the pat down procedure. After the pat down, the officer filled out a field interview card, obtained Mr. Wilson’s information and ran it to see if he had any arrests or attachments. The officers discovered that Mr. Wilson had a Jefferson Parish attachment. As a result of the attachment, the officers placed Mr. Wilson under arrest. In placing him under arrest, they placed his hands behind his back, handcuffed him, placed him in the unit, and brought him to the lockup. Officer Lovett explained that a quick pat down does not involve a search of the pockets. Furthermore, the officers did not empty Mr. Wilson’s pockets at the scene or conduct a thorough search at the scene.
 

 Officer Lovett testified that once he took Mr. Wilson out of the vehicle at lockup, he noticed Mr. Wilson attempted to conceal a small object in his hand. Mr. Wilson placed the object in his left front pants pocket. At lockup, Officer Lovett searched Mr. Wilson and found a clear plastic bag containing a white powdered substance. No one had searched Mr. Wilson prior to this. The substance field tested positive for cocaine.
 

 |
 
 (Analysis
 

 Mr. Wilson argued that the trial court erred in denying the motion to suppress for these reasons: (1) Mr. Wilson was arrested without probable cause when the police first saw Mr. Wilson at the Burger King and handcuffed him. Thus the evidence should have been suppressed as “fruit of the poisonous tree.” (2) Even assuming that the police action is considered a stop, the police lacked the requisite reasonable suspicion to make an investigatory stop. There was insufficient articula-ble suspicion given in order for the officer to conduct the initial investigatory stop which was essentially an arrest.
 

 Mr. Wilson filed a pretrial motion to suppress evidence urging that the evidence was seized in violation of the Federal and State Constitutions and State laws. After a hearing at which defense counsel submitted the matter without argument and did not particularize the constitutional grounds for the motion to suppress, the trial court denied the motion. Now on appeal, Mr. Mitchell raises for the first time that the police lacked probable cause for the arrest, and that the officers did not have the necessary reasonable suspicion to justify an investigatory stop.
 

 The defense has the burden of asserting the basis for its motion to suppress in order to provide the state with adequate notice so that it may prepare evidence addressing the defendant’s claims. La.
 
 *1153
 
 C.Cr.P. art. 703(E);
 
 State v. Jackson,
 
 04-1388, p. 5 (La.App. 5 Cir. 5/31/05), 904 So.2d 907, 911,
 
 writ denied,
 
 05-1740 (La.2/10/06), 924 So.2d 162. Therefore, the defendant is limited on appeal to the grounds articulated in his motion to suppress or at the hearing on that motion. A new basis, even a meritorious one, cannot be raised for the first time on appeal.
 
 Jackson, supra; State v. Smith,
 
 94-120, p. 6 (La.App. 5 Cir. 5/31/94), 638 So.2d 452, 455.
 

 | ./Accordingly, these grounds asserted for the first time on appeal are not properly before this court. But even so, these arguments lack merit.
 
 [2]
 

 In
 
 State v. Hill,
 
 97-2551 (La.11/6/98), 725 So.2d 1282, 1283, the Louisiana Supreme Court held that even assuming the initial police encounter was illegal, the discovery of an outstanding arrest warrant for the defendant dissipated any taint caused by the alleged illegal stop.
 

 In that case, the officers were patrolling an area after receiving a general tip of narcotics activity. They observed two unknown men in front of an abandoned building. The officers exited their vehicles and approached the men. The defendant and his companion began walking away. The officers initiated a conversation with the men and subsequently frisked them for weapons, although they found nothing. During the interview, a computer search returned two outstanding arrest warrants for the defendant. The defendant was arrested and a search incident to his arrest was conducted. As a result of this search, a crack pipe that tested positive for cocaine residue was discovered.
 
 Id.
 

 In its analysis of whether the evidence seized should be suppressed, the
 
 Hill
 
 court considered the multi-factor test for the attenuation doctrine set forth in
 
 Brown v. Illinois,
 
 422 U.S. 590, 603, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416, 427 (1975). The primary considerations under
 
 Brown
 
 are: (1) the temporal proximity of the illegality and the acquisition of the evidence to which the instant objection is made; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct.
 
 Hill, supra,
 
 at 1284 citing
 
 Brown,
 
 95 S.Ct. at 2262, and
 
 State v. Scott,
 
 389 So.2d 1285, 1288 (La.1980) (footnote omitted). Additionally, in considering whether the evidence should be suppressed,
 
 Brown
 
 requires us to weigh each consideration in light of the policies behind the Fourth Amendment.
 
 Id.
 

 Hill held:
 

 [Pjroperly focusing on the dictates of
 
 Brown,
 
 we find that the police officers’ discovery of the outstanding warrants was a significant intervening event. The defendant’s arrest was based upon probable cause not derived from the initial stop and frisk. Therefore, the search incident thereto that uncovered the crack pipe was permissible. Because we find that the crack pipe was discovered in a lawful search incident to the defendant’s lawful arrest based on probable cause, we conclude that the disputed evidence was obtained through “some
 
 *1154
 
 other means sufficiently distinguishable, thereby purging the evidence of the primary taint.”
 
 Wong Sun,
 
 371 U.S. at 488, 83 S.Ct. at 417, 9 L.Ed.2d at 455. We find that the discovery of the outstanding arrest warrants for the defendant constituted an intervening circumstance under
 
 Brown,
 
 which sufficiently attenuated the initial
 
 Terry
 
 stop from the ultimate seizure of the disputed crack pipe.
 

 Hill, supra
 
 at 1287.
 

 Next,
 
 Hill
 
 found that there was no indication that the officers’ conduct was particularly egregious or amounted to a flagrant abuse of police power. Once the officers knew of the outstanding arrest warrants, they would have been derelict in their duty not to arrest the defendant.
 
 Id.
 
 Thus, suppression of the disputed evidence would not serve the policies behind the exclusionary rule, nor contravene the protections provided by the Fourth Amendment.
 
 Id. Hill
 
 is controlling here.
 

 Mr. Wilson was arrested on an outstanding attachment. The cocaine was not discovered during the pat down but only after Mr. Wilson’s arrest for the outstanding attachment. The search at lockup conducted incidental to the lawful arrest was lawful.
 
 State v. Hill,
 
 97-2551 (La.11/6/98), 725 So.2d 1282, 1287 (Subsequent to such a lawful arrest, a search incident thereto is authorized in order 18to ensure officer safety and to protect against destruction of evidence.). We need not determine whether the initial police encounter was an investigatory stop requiring reasonable suspicion because the discovery of the existence of the outstanding arrest warrant gave Officer Lovett probable cause to arrest, and constituted an intervening circumstance within the meaning of
 
 Brown v. Illinois,
 
 422 U.S. 590, 603, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416, 427 (1975). That intervening circumstance dissipated the possible taint caused by prior police misconduct.
 
 State v. Hill,
 
 97-2551 (La.11/6/98); 725 So.2d 1282, 1285.
 

 Thus, the trial court did not err in denying Mr. Wilson’s motion to suppress the evidence.
 

 Sentence
 

 Mr. Wilson argues that the trial court erred when imposing the maximum sentence despite the fact that Mr. Wilson pleaded to the habitual offender bill of information. He contends that the court erred by not considering Mr. Wilson’s nonviolent history. Mr. Wilson did not file a motion to reconsider sentence. The failure to file or make a motion to reconsider sentence precludes a defendant from raising any objection to the sentence on appeal, including a claim of excessiveness. La.C.Cr.P. art. 881.1(E). The failure to file a motion to reconsider sentence, or to state specific grounds upon which the motion is based, limits a defendant to a review of his sentence for constitutional ex-cessiveness only.
 
 State v. Cotton,
 
 10-409, p. 9 (La.App. 5 Cir. 5/31/11), 67 So.3d 673, 678-79 (citations omitted).
 

 La.C.Cr.P. art. 881.2(A)(2), however, precludes a defendant from seeking review of a habitual offender sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea.
 
 State v. Henry,
 
 08-658, p. 16 (La.App. 5 Cir. 10/27/09), 27 So.3d 935, 947,
 
 writ denied,
 
 09-2485 (La.4/23/10), 34 So.3d 269.
 

 Since Mr. Wilson’s sentence was imposed in conformity with the sentencing agreement at the time of the habitual offender admission, and the imposed 10-year sentence was within the agreed upon range, Mr. Wilson is barred from challenging his sentence as excessive. Thus, this assignment lacks merit.
 

 
 *1155
 
 Error Patent
 

 Mr. Wilson requests an error patent review. However, this Court routinely reviews the record for errors patent in accordance with La.C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975);
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir. 1990) regardless of whether defendant makes such a request. Upon review, we find no errors patent requiring corrective action.
 

 Conclusion
 

 Accordingly, for the reasons stated, we affirm Mr. Wilson’s conviction and sentence.
 

 AFFIRMED
 

 [1]
 

 . In brief, defense counsel states that Mr. Wilson was also denied parole eligibility based on the minute/entry/commitment. The minute/entry/commitment, however, correctly reflects that the trial court imposed a legal sentence and did not deny parole eligibility.
 

 [2]
 

 . As a general rule, an appellate court may review the testimony at trial in determining the correctness of the trial court's pre-trial ruling on a motion to suppress.
 
 State v. Sherman,
 
 04-1019, p. 1 (La.10/29/04), 886 So.2d 1116, 1116 (per curiam) and the cases cited therein. This review may provide supplemental information relevant to the suppression issue.
 
 Id.
 
 In many cases the testimony at trial may not diverge from the evidence adduced at a pretrial hearing on a motion to suppress.
 
 Id.
 
 at 2, 886 So.2d at 1116. We have reviewed supplemental information given at the trial relevant to the suppression issue. Even assuming the issues raised on appeal are properly before this Court, that evidence, does not, however, affect the result we reach. Officer Lovett’s testimony was substantially similar to his testimony given at the suppression hearing.