SUSAN M. CHEHARDY, Chief Judge.
|20n appeal, defendant challenges his conviction for possession with intent to distribute marijuana. For the following reasons, we affirm defendant’s conviction and sentence.

Procedural history

On May 13, 2013, the Jefferson Parish District Attorney filed a bill of information charging defendant, Charles Gross, with possession with intent to distribute marijuana, in violation of La. R.S. 40:966A. On May 28, 2013, defendant was arraigned and pled not guilty. Defendant filed pretrial motions to suppress evidence and his statement, which were heard and denied on October 24, 2013.
Trial before a twelve-person jury commenced on October 30, 2013. On October 31, 2013, the jury found defendant guilty as charged.
On November 12, 2013, the trial judge denied defendant’s Motion for New Trial and Motion for Post-Verdict Judgment of Acquittal. That same day, the trial court sentenced defendant to “fifteen years with the Department of Corrections.”
Immediately thereafter, the State filed a multiple offender bill of information, alleging that defendant was a second felony offender. Defendant | astipulated to the multiple bill, which the trial judge accepted. Thereafter, the trial court vacated defendant’s original sentence and, pursuant to La. R.S. 15:529.1, imposed an enhanced sentence of “fifteen years in the Department of Corrections.” After his re-sentencing, defendant filed a Motion for Appeal, which was granted by the trial court. The instant appeal follows.

Facts

Detective Randy Picarella of the Jefferson Parish Sheriffs Office Narcotics Division testified that he had received two complaints concerning illegal narcotics sales from a specific apartment in the complex located at 4700 Jefferson Highway. During his shift on the evening of April 10, 2013, Detective Picarella parked across the street in his unmarked police vehicle and conducted surveillance of the apartment complex.
During his surveillance, he observed a grey sedan pull into the complex’s parking lot followed by a second vehicle, which parked next to the first vehicle. The driver of the grey sedan exited his vehicle, approached the passenger side of the second vehicle, and engaged in a brief conversation with an occupant of the second vehicle. Next, the driver of the grey sedan went into the “lobby” of the apartment complex and up a flight of stairs to the second floor.
After about one minute, the driver of the grey sedan exited the door to the complex, approached the passenger side of the second vehicle, and reached his right hand into the second vehicle. Almost immediately, the driver of the grey sedan returned to his vehicle and both drivers quickly left the apartment complex.
Detective Picarella, who was “close enough to see with the naked eye” and had an unobstructed view of the vehicles, testified that, although he could not see inside the vehicles, he suspected that the man in question was conducting a hand-to-hand drug transaction with an occupant of the second vehicle.
|4Based on his suspicion, Detective Pi-carella followed the driver of the grey sedan for a short period of time while running a computer check of the vehicle’s license plate. As a result of the computer search, Detective Picarella learned that the vehicle was registered to Charles Gross.
After a short period of time, Detective Picarella stopped the grey sedan by acti *526 vating the lights and sirens on his unmarked police vehicle. Detective Picarel-la, who was dressed in plain clothes with his badge and weapon displayed, approached the vehicle, explained that he was conducting a narcotics investigation, and asked the driver to exit his vehicle.
As Detective Picarella spoke with the driver about his route and destination that evening, Detective Picarella found that defendant was not truthful about his actions earlier that evening. When confronted with the inconsistencies of his account, the driver became visibly nervous, which prompted Detective Picarella to pat him down. Detective Picarella did not discover any weapons on the driver. Eventually, the driver admitted that he had been at the apartment complex located at 4700 Jefferson Highway to meet a “girlfriend.” By this time, Detective William Meetze had arrived at the location where the driver was stopped.
When Detective Picarella asked the driver for consent to search his vehicle, he agreed, stating, “Sure, go ahead, I don’t have anything in there.” Detective Meetze searched the backseat of the vehicle and found a large, clear, plastic bag holding fourteen smaller, clear, plastic bags that each contained a leafy, green, vegetable matter. The substance field-tested positive for marijuana. Further, the marijuana and its packaging weighed twenty-seven grams, which is slightly less than one ounce.
At that point, Detective Picarella advised defendant he was under arrest, placed him in handcuffs, and read him his constitutional rights pursuant to Is Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Almost immediately thereafter, defendant explained that he was having trouble finding employment, so he was selling marijuana to make money. He further admitted that he was at the apartment complex located at 4700 Jefferson Highway to sell a bag of marijuana to a man named “Steve.”
Sergeant Elvin Módica of the Jefferson Parish Sheriffs Office Narcotics Division, who was qualified as an expert in the manufacturing, packaging, and distribution of street-level narcotics, testified that the manner in which this marijuana was packaged — one large bag containing fourteen smaller plastic bags — is consistent with “someone who possessed it with the intent to distribute it.” He explained that, although an ounce of marijuana could be for personal use, carrying fourteen individual plastic bags is not consistent with personal use.
Sergeant Módica further stated that people that possess marijuana for personal use would typically have some paraphernalia, i.e., a pipe or papers, to enable them to ingest the marijuana. Finally, Sergeant Módica stated that the street price for one ounce, or 28 grams, of marijuana is between $30.00 and $50.00. He noted, however, that if the ounce is broken down into fourteen two-gram bags, and sold for $10.00, the seller could realize a profit of $90.00 to $110.00.
After hearing the testimony and evidence, the jury, by a vote of 10-2, found defendant guilty as charged of possession with intent to distribute marijuana.

Law and Argument

On appeal, defendant raised two assignments of error: first, the trial court erred by not granting the defense motions to suppress the statement and evidence after the illegal arrest of Mr. Gross, and second, the trial court erred by not granting a mistrial after an expert witness was allowed to testify as to the ultimate issue of guilt.
|fiIn his first assignment of error, defendant argues that the trial court erred in *527 denying his motion to suppress his statement and the evidence. He contends that Detective Picarella lacked reasonable suspicion to stop and detain him. He maintains that his actions at the apartment complex, without any further corroboration of criminal activity specific to him, did not justify the alleged investigatory stop. The State responds that Detective Picarella had reasonable suspicion to initiate an investigatory stop because he had corroborated the information from two anonymous tips and had observed activity by the subject analogous to a hand-to-hand drug transaction.
The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. As a general rale, searches and seizures must be conducted pursuant to a validly executed search warrant or arrest warrant. State v. Payne, 10-46 (La.App. 5 Cir. 1/25/11), 59 So.3d 1287, 1295, writ denied, 11-0387 (La.9/16/11), 69 So.3d 1141. A search and seizure conducted without a warrant issued on probable cause is per se unreasonable unless the warrantless search and seizure can be justified by one of the narrowly drawn exceptions to the warrant requirement. State v. Warren, 05-2248 (La.2/22/07), 949 So.2d 1215, 1226.
At a suppression hearing, the State bears the burden of proof in establishing the admissibility of evidence seized without a warrant. La.C.Cr.P. art. 703(D). The trial court’s decision to deny a motion to suppress is afforded great weight and will not be set aside, unless there is an abuse of discretion. State v. Hunt, 09-1589 (La.12/01/09), 25 So.3d 746, 752. In reviewing the trial court’s ruling on a motion to suppress, the appellate court may consider the evidence at the motion hearing and at trial. State v. Imbraguglio, 08-64 (La.App. 5 Cir. 5/27/08), 987 So.2d 257, 264.
17Louisiana and federal law clearly allow a police officer to conduct a brief investigatory stop when the officer has a reasonable articulable suspicion of criminal activity. La.C.Cr.P. art. 215.1; Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). Under the Terry standard, as codified in La.C.Cr.P. art. 215.1, police officers may stop a person in a public place who they reasonably suspect is committing, has committed, or is about to commit an offense and demand that the person identify himself and explain his actions. State v. Sam, 08-220 (La.App. 5 Cir. 6/19/08), 988 So.2d 765, 769.
An investigatory stop requires reasonable suspicion of criminal activity. State v. Boss, 04-457 (La.App. 5 Cir. 10/26/04), 887 So.2d 581, 585. “Reasonable suspicion” is something less than probable cause to arrest and requires that police officers have sufficient knowledge of facts and circumstances to justify an infringement of the individual’s right to be free from government interference. State v. Chauvin, 06-362 (La.App. 5 Cir. 10/31/06), 945 So.2d 752, 757-58. Absent reasonable suspicion, an investigatory stop is illegal and the evidence seized as a result is suppressible. State v. Boss, supra.
The determination of reasonable grounds for an investigatory stop does not rest upon the officer’s subjective beliefs or attitudes, but is dependent on an objective evaluation of all the circumstances known to the officer at the time of his challenged action. State v. Kalie, 96-2650 (La.9/19/97), 699 So.2d 879, 880 (per curiam). In considering whether the officer acted reasonably in such circumstances, due weight must be given, not to his incho *528 ate and unparticularized suspicion or hunch, but to the specific reasonable inferences that he is entitled to draw from the facts in light of his experience. State v. Sam, supra.
|rA reviewing court must take into account the totality of the circumstances, giving deference to the inferences and deductions of a trained police officer that might elude an untrained person. An officer’s experience, his knowledge of recent criminal patterns, and his knowledge of an area’s frequent incidence of crimes are factors that may support reasonable suspicion for an investigatory stop. State v. Sam, 988 So.2d at 769-70.
Tips provided to police by confidential informants can supply sufficient reasonable suspicion to conduct an investigatory stop under certain circumstances. An informant’s past record for accuracy and reliability is a factor taken into account when determining the reliability of the tip in question. State v. Austin, 04-993 (La.App. 5 Cir. 3/1/05), 900 So.2d 867, 879, writ denied, 05-830 (La.11/28/05), 916 So.2d 143.
An informant’s tip must also be corroborated by the police. Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). If an informant’s tip accurately predicts the offender’s future behavior, it gains an additional modicum of reliability. Id. Predictive ability is not always necessary; a non-predictive tip coupled with police corroboration or independent police observation of suspicious activity can provide the police with the requisite reasonable suspicion to detain a suspect. State v. Francois, 04-1147 (La.App. 5 Cir. 3/29/05), 900 So.2d 1005, 1010.
The relevant inquiry is whether Detective Picarella had reasonable suspicion or “specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant[ed]” the stop of defendant. See Terry, 392 U.S. at 21, 88 S.Ct. at 1880.
In State v. Fearheiley, 08-307 (La.4/18/08), 979 So.2d 487 (per curiam), the Louisiana Supreme Court found that a police officer’s observation of an apparent |abrief hand-to-hand transaction inside a vehicle gave rise to reasonable suspicion for an investigatory stop because the officer was not “required to turn a blind eye to the circumstances and ignore what two years of experience in narcotics investigations ... had taught him, that in the narcotics trade ‘when it’s done outside, it’s done very fast and from one hand to the next.’ ”
This Court has also found that a police officer had reasonable suspicion to justify an investigatory stop when that officer observed a defendant engage in a perceived hand-to-hand transaction. See, State v. Johnson, 10-209 (La.App. 5 Cir. 10/12/10), 52 So.3d 110, 117-20, unit denied, 10-2546 (La.4/1/11), 60 So.3d 1248; State v. Sam, supra; State v. Flagg, 99-1004 (La.App. 5 Cir. 4/25/00), 760 So.2d 522, 527, writ denied, 00-1510 (La.3/9/01), 786 So.2d 117; State v. White, 98-91 (La.App. 5 Cir. 6/30/98), 715 So.2d 714, 716, unit denied, 98-2043 (La.11/25/98), 729 So.2d 577.
In the instant case, Detective Picarella was conducting surveillance for narcotics trafficking on an apartment complex that defendant visited when Detective Picarella observed defendant conduct what appeared to be a hand-to-hand drug transaction then exit the area quickly. Considering the totality of the circumstances, we find no error in the trial judge’s finding of reasonable suspicion sufficient for an investigatory stop.
Next, we turn to whether the evidence seized and statement obtained subsequent to the stop were lawfully at *529 tained. It is well-settled in federal and state jurisprudence that police officers may seize contraband detected during the lawful execution of an investigatory stop. State v. Williams, 98-1006 (La.App. 5 Cir. 3/30/99), 735 So.2d 62, 71, writ denied, 99-1077 (La.9/24/99), 747 So.2d 1118. One such tool of detection is a search pursuant to consent. Schneckloth v. Bustamante, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Oral consent is | insufficient. State v. Ossey, 446 So.2d 280, 287 n. 6 (La.1984), cert. denied, 469 U.S. 916,105 S.Ct. 293, 83 L.Ed.2d 228 (1984).
Consent to search is an exception to the warrant requirement when it is freely and voluntarily given by a person who possesses authority or other sufficient relationship to the premises or other effects sought to be inspected. United States v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); State v. Edwards, 97-1797 (La.7/2/99), 750 So.2d 893, 901, cert. denied, 528 U.S. 1026, 120 S.Ct. 542, 145 L.Ed.2d 421 (1999); State v. Gomez, 01-717 (La.App. 5 Cir. 11/27/01), 802 So.2d 914, 918. The Louisiana Supreme Court (quoting Florida v. Jimeno, 500 U.S. 248, 250-51, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297 (1991)) has commented, “ ‘[W]e have long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so.’ ” State v. Huynh, 08-1628 (La.11/10/08), 993 So.2d 1198 (per curiam).
When the State relies on consent to justify a warrantless search, it has the burden of proving the consent was given freely and voluntarily. State v. Gibson, 97-1203 (La.App. 5 Cir. 3/25/98), 708 So.2d 1276, 1280. Voluntariness is a question of fact to be determined by the trial judge under the totality of the circumstances. Edwards, supra; Gibson, at 1281.
Here, Detective Picarella testified that defendant consented, when asked, to the search of his vehicle. Detective Meetze stated that he heard defendant consent to the search of his vehicle. Pursuant to the search, Detective Meetze discovered marijuana and defendant was placed under arrest. Following his arrest, defendant waived his rights, agreed to speak with Detective Picarella, and made an inculpa-tory statement.
Although defendant testified at the suppression hearing that he did not give consent to search his vehicle and that he was not read his Miranda rights, the trial _[i¡court in its reasons for denying defendant’s motions to suppress stated “this Court is left with making a credibility call between the defendant who has some six prior felony convictions and two Jefferson [Parish] Sheriffs deputies. The Court finds the deputies[’] testimony to be more credible.”
When a trial court makes findings of fact based on the weight of the testimony and the credibility of the witnesses, a reviewing court owes those findings great deference and may not overturn those findings unless there is no evidence to support those findings. State v. Lewis, 12-902 (La.App. 5 Cir. 6/27/13), 121 So.3d 128, 134, writ denied, 13-1296 (La.4/17/14), 138 So.3d 618. We find that there is sufficient evidence to support the trial court’s finding.
In view of the foregoing, we find no error in the trial court’s ruling denying defendant’s motion to suppress evidence and statement. This assignment of error lacks merit.
In his second assignment of error, defendant argues that he was denied a fair trial when his motions for mistrial were denied and Sergeant Módica was permitted to testify to the facts in this case and *530 express his opinion as to the ultimate issue of guilt, in violation of La. C.E. art. 704.
La. C.E. art. 704 provides that “... in a criminal case, an expert witness shall not express an opinion as to the guilt or innocence of the accused.” This prohibition applies even if the opinion is solicited through the presentation of a hypothetical situation. State v. Deal, 00-0434 (La.11/28/01), 802 So.2d 1254, 1261, cert. denied, 537 U.S. 828, 123 S.Ct. 124, 154 L.Ed.2d 42 (2002).
When a witness makes an irrelevant remark that might prejudice the defendant, La.C.Cr.P. art. 771 gives the trial court the option to either admonish the jury or, if an admonition does not appear to be sufficient, to declare a mistrial. Instate v. Ducre, 01-2778 (La.9/13/02), 827 So.2d 1120 (per curiam). Mistrial is a drastic remedy, which should be used only upon a clear showing of prejudice by the defendant; a mere possibility of prejudice is not sufficient. Id. A trial judge has broad discretion in determining whether conduct is so prejudicial as to deprive an accused of a fair trial. Id.
At trial, Sergeant Módica was accepted as an expert in the field of manufacturing, packaging, and distribution of street level narcotics. During Sergeant Modica’s testimony, the prosecutor showed him the plastic bag of marijuana seized from defendant’s vehicle and asked Sergeant Módica if he had ever seen marijuana packaged in the same manner. Sergeant Módica responded that marijuana packaged in that manner “would be indicative of someone who possessed it with the intent to distribute it.” Defense counsel objected unsuccessfully on the basis that Sergeant Módi-ca was rendering an “ultimate conclusion.”
Sergeant Módica went on to explain that generally, marijuana is broken down into small amounts and packaged in separate bags because “they plan to resell it.” The State continued:
PROSECUTOR: Would it be consistent with an individual user to be found in a vehicle with 14 individually wrapped bags, in your opinion?
SGT. MODICA: In my opinion, if he was — if these bags were for personal use, you’d only need one or two, whatever you planned on consuming at that point you left your home or wherever you went, however much you planned on consuming. You wouldn’t bring everything you had with you—
DEFENSE: Objection, again, Your Honor, speaking to the ultimate issue.
THE COURT: Overruled.
PROSECUTOR: You can continue.
| irSGT. MODICA: Someone traveling in a vehicle like that, it’s just not common to see them take everything they have with them to travel with, unless, it’s a case of you’re bringing it with you, someone who possesses with the intent gets a phone call or something happens that somebody wants to purchase something, well, they have it ■with them. It’s readily available ...
Sergeant Módica then testified that those who possess marijuana for personal use only are commonly found in possession of “some sort of smoking devices to consume it,” to which the State responded:
PROSECUTOR: Are you familiar with the fact that on April 10th, of 2013, Mr. Gross was found with this marijuana. He was not found with anything like that, any pipes, papers, bongs, cans—
Defense counsel objected and moved for a mistrial on the basis that the State was not posing the questions in the form of a hypothetical, and Sergeant Módica was drawing conclusions that were reserved for the jury relative to defendant’s guilt or *531 innocence. The trial court denied the motion for mistrial and the State continued:
PROSECUTOR: Sergeant Módica, if I were to tell you that Mr. Gross was not found with anything that you just described, any papers, bongs or even aluminum cans, would that be consistent or inconsistent with an individual user?
SGT. MODICA: That would be inconsistent with an individual user.
DEFENSE: Please note my standing objection to this testimony, Judge.
The State then presented Sergeant Mó-dica with a photograph of the apartment complex where defendant was seen prior to his arrest and proceeded to pose a “hypothetical” that tracked the specific facts of this case that was previously adduced from the arresting officers’ trial testimony. Specifically, the State relayed the exact information gained by Detective Pi-carella during his surveillance of the apartment complex and asked Sergeant Módica whether those facts were | u significant based on his experience in street level narcotics distribution. Sergeant Módica testified that based on the facts presented, he would suspect that “maybe a street level drug transaction went down.”
Prior to cross-examination, defense counsel again moved for a mistrial under “State v. Gibson, State v. Evans, and State v. Hollins,” arguing that an expert is limited to formulating an opinion based on hypotheticals and is not permitted to make “ultimate conclusions” based on the specific facts of the case. The trial court again denied the motion for mistrial.
On cross-examination, in response to defense counsel’s question regarding the possibility that less than an ounce of marijuana found in individual bags could be for personal use, Sergeant Módica testified, “When I see this many bags, it’s indicative of a possession with intent case.” Following cross-examination, the following transpired during the State’s redirect:
PROSECUTOR: You said before to one of Ms. Bourg’s questions that 14 baggies like that borderline possession versus possession with intent to distribute, is that based only on looking at those baggies themselves, or is it also based on the other sort of factors?
SGT. MODICA: No, sir, that would be strictly if, like I said, we were in a vacuum and there was no other factors to go with anything, one may be able to argue that it was a possession. But in that vacuum, if I had to make a decision what this was, this would be a possession with intent to distribute case because not only these bags alone would tell me that somebody took the time and the effort to take a larger amount and make it into a smaller amount, which I don’t need any other factors to tell me that that happened. I know that happened some kind of way. But in that vacuum if only we had that, someone might be able to argue that it was just strictly a possession, if you had nothing else to base it on.
PROSECUTOR: Um-hum.
SGT. MODICA: I mean definitely not because of the way it’s packaged or the amount, I’m just saying someone might be able to argue if you have no other factors to support something.
| i,r,(Emphasis added.)
On appeal, defendant contends that this testimony was equivalent to a direct statement by Sergeant Módica that defendant distributed drugs and such testimony is tantamount to an opinion on the ultimate issue regarding his guilt for the charged offense.
*532 In support of this argument, defendant cites State v. Wheeler, 416 So.2d 78 (La.1982), in which the prosecutor posed a “hypothetical” to his expert in narcotics transactions, which consisted of a summary of his evidence. After he related the facts to the witness, he asked “In your expert opinion what is the likelihood of this individual being involved in the distribution of marijuana?” Over the defense counsel’s objection, the expert answered, “In my opinion the person would be involved in the distribution of marijuana.... ” The supreme court found that his testimony amounted to an opinion that the defendant was involved in the distribution of marijuana and reversed the defendant’s conviction on this ground.
In State v. Johnson, supra, this Court found that the prosecutor’s hypothetical, which tracked the specific facts of the case, including the activity observed during the surveillance, down to the number of pieces of crack recovered from the defendant and the weight of the large piece of crack recovered from the defendant’s apartment, caused the expert witness to come “too close to commenting on the ultimate issue.” Johnson, 52 So.3d at 125.
This Court held, however, that the trial court did not abuse its discretion in refusing to grant a mistrial because it was unclear how the expert witness’s testimony prejudiced the defendant. This Court considered the fact that prior to deliberations, the trial judge instructed the jury on the law regarding expert 1 ,r,witnesses and the jurors role as the “sole judges of the law and the facts on the question of guilt or innocence,” finding the trial judge’s instructions were sufficient to counteract any influence caused by the officer’s testimony. Further, despite the officer’s testimony, this Court found that the corroborated tip, the amount of cocaine found on the defendant and at his home, and the manner in which it was packaged, provided substantial evidence of the defendant’s guilt. Thus, this Court concluded that the officer’s comments were not so prejudicial as to warrant a mistrial.
In the case at bar, we again find that the prosecutor’s questions mirrored the specific facts of the case, which again caused the expert witness to come too close to commenting on the ultimate issue of guilt, which is the sole purview of the trier of fact.
Finding that the testimony was improper under La.C.Cr.P. art. 704, we must determine whether the trial court committed reversible error in denying defendant’s motions for mistrial. In this case, although the trial court did not admonish the jurors at the time of the objected-to testimony, the trial court did instruct the jurors before they retired to deliberate as follows:
Although you are the sole judges of the facts on the question of guilty or innocent, you have the duty to accept and apply the law as given to you by the Court. You must decide the facts from the testimony and other evidence, and apply the law to those facts in reaching your verdict.
Further, both prior to Sergeant Modica’s testimony and at the conclusion of trial, the trial court also instructed the jury on the law with respect to expert witnesses. Accordingly, as in Johnson, supra, we find that the trial court’s instructions to the jury were sufficient to counteract any influence caused by Sergeant Modica’s testimony.
| ^Moreover, based on our review of the record, we cannot say that Sergeant Mo-dica’s comments were so prejudicial as to warrant a mistrial. The record reflects that Detective Picarella observed what he suspected was hand-to-hand drug transac *533 tion by defendant at the apartment complex under surveillance for narcotics activity. Further, defendant was found in possession of fourteen plastic bags of marijuana and defendant confessed to selling marijuana because he was unable to find employment. Under the facts set forth in evidence at trial, defendant fails to show how the expert witness’s testimony prejudiced him based on the substantial evidence of his guilt presented at trial. Thus, we find the trial court did not abuse its discretion in refusing to grant a mistrial. This assignment of error lacks merit.

Errors patent

Pursuant to La.C.Cr.P. art. 920, we have reviewed the record for errors patent and note the following that require corrective action.
First, although the commitment reflects that defendant was given a proper advisal of the time period for seeking post conviction relief as required by La.C.Cr.P. art. 930.8, the transcript indicates that the trial court failed to provide the requisite advisal. When there is a discrepancy between the commitment and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983).
If a trial court fails to advise, or provides an incomplete advisal, pursuant to La.C.Cr.P. art. 930.8, the appellate court may correct this error by informing the defendant of the applicable prescriptive period for post conviction relief by means of its opinion. See State v. Brooks, 12-226 (La.App. 5 Cir. 10/30/12), 103 So.3d 608, writ denied, 12-2478 (La.4/19/13), 111 So.3d 1030; State v. Taylor, 12-25 (La.App. 5 Cir. 6/28/12), 97 So.3d 522, 538; State v. Jacobs, 07-887 (La.App. 5 Cir. 5/24/11), 67 So.3d 535, writ denied, 11-1753 (La.2/10/12), 80 So.3d 468, cert. denied, — U.S. —, 133 S.Ct. 139, 184 L.Ed.2d 67 (2012); State v. Neely, 08-707 (La.App. 5 Cir. 12/16/08), 3 So.3d 532, 538, writ denied, 09-0248 (La.10/30/09), 21 So.3d 272; State v. Davenport, 08-463 (La.App. 5 Cir. 11/25/08), 2 So.3d 445, 451, writ denied, 09-0158 (La.10/16/09), 19 So.3d 473.
Accordingly, by this opinion, we advise defendant that no application for post conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La.C.Cr.P. arts. 914 or 922.

Conclusion

For the foregoing reasons, we affirm defendant’s conviction, multiple offender adjudication, and enhanced sentence.

AFFIRMED.