JOHNSON, J.
| defendant, Lavell Gant, appeals his convictions and sentences for attempted first degree murder and possession of a firearm by a convicted felon from the 23rd Judicial District Court, Division “D”. For the following reasons, we affirm Defendant’s convictions and sentences.
FACTS AND PROCEDURAL HISTORY
On July 16, 2014, the grand jury for the 23rd Judicial District returned a true bill of indictment that Defendant committed attempted second degree murder in violation of La. R.S. 14:27 and La. R.S. 14:30.1 (count one) and possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1 (count three).[1] On August 11, 2014, Defendant was arraigned and pleaded not guilty to the charges. Defendant filed pretrial motions, including a motion to suppress evidence. On January 12, 2015, the trial court heard the motion to suppress. During the hearing, defense counsel became ill, and the matter was continued to a later date.
On March 9, 2015, Defendant informed the trial court that he wished to waive his right to a jury trial. On April 7, 2015, Defendant filed written notice of his wish to waive his right to a trial by jury, and the trial court granted Defendant’s request on April 13, 2015. On April 29, 2015, Defendant filed a motion for speedy trial, which the trial court granted on May 1, 2015, stating that trial should commence within 120 days from the filing of Defendant’s motion. On May 11, 2015, the trial court again took up the motion to suppress. On the same date, Defendant filed a motion in support of his motion to suppress. At the hearing, testimony concluded, counsel for both sides presented argument, and the trial court denied the motion to suppress.[2]
| ¾A bench trial was conducted on June 9, 2015, and June 10, 2015. During the trial, Deputy Prentiss Woodfork of the St. James Parish Sheriffs Office testified that on May 27, 2014, he responded to a shooting at 2157 Church Street in Vacher-ie. Deputy Woodfork testified that upon entering the residence, family members directed him to the bedroom, and he observed a black male, who was later identified as Ansley Jackson, lying in bed in a pool of blood. Deputy Woodfork indicated that the man was totally unresponsive and was “bleeding out” from a bullet wound. He stated that he called “Acadi-an” and stayed with the victim. Deputy Woodfork testified that he took pictures because he thought the victim was going to die.
*1087 Detective Brett Forsythe of the St. James Parish Sheriffs Office testified that on May 27, 2014, at around 5:08 a.m., he was called to investigate a shooting at 2157 Church Street involving Mr. Jackson. He stated that Mr. Jackson was in the bedroom being tended to by “Acadian Ambulance” when he arrived. Detective For-sythe testified that Mr. Jackson had a gunshot wound below his right knee and was losing a lot of blood. He stated that he observed and recovered a bullet in the middle of the pool of blood on the bed. According to Detective Forsythe, when he asked if Mr. Jackson knew who shot him, Mr. Jackson indicated nonverbally that he did not know by shaking his head “no.”
Detective Forsythe stated that he observed two holes in the window in Mr. Jackson’s bedroom that faced the south side of the residence. He testified that he photographed the area outside the window and located two cartridge cases on the ground. Detective Forsythe indicated that both cartridge cases were GFL Luger 9 mm cases. He stated that he went back into the residence and recovered a bullet from inside the mattress.
Detective Forsythe continued his investigation by interviewing the | ..¡occupants of the residence and obtained information about Defendant, who he then considered to be a possible suspect. Detective For-sythe learned that Marie Washington was in relationships with Defendant and Mr. Jackson. He testified that he learned that Defendant’s address was 1218 Old Vacher-ie Street, and he went to that location. Detective Forsythe determined that Elizabeth Gant[3] owned the trailer at that address. According to Detective Forsythe, one of Ms. Gant’s sons answered the door and invited the officers in. Detective For-sythe stated that he asked for Ms. Gant or Defendant, and Defendant emerged from the rear bedroom and identified himself. According to Detective Forsythe, Defendant was placed under arrest for an outstanding warrant. He stated that he was at Defendant’s residence a little over two hours after the shooting occurred.
Detective Forsythe determined that Defendant did not contribute financially to the residence. He testified that he obtained written consent from Ms. Gant to search the master bedroom. Ms. Gant and Defendant’s aunt, Annette Whittington, indicated that Defendant was the only one who stayed in the master bedroom. Detective Forsythe testified that he conducted a search of the master bedroom where Defendant had exited. He indicated that there was a queen-size bed and two bunk beds, but only the queen-size bed appeared to be slept in. He also stated that there was male clothing in the closet, and he found mail addressed to Defendant at that address in the bedroom. Detective Forsythe stated that he found a Smith and Wesson pistol hidden in the hot water heater closet in the master bathroom with a magazine containing twelve live rounds of GFL 9 mm Luger ammunition. Detective For-sythe indicated that the pistol was marked with serial number DSL 1051. He testified that the master bathroom was located within Defendant’s bedroom. He indicated that he also found a pair of shoes in Defendant’s room covered in grass and that the bottom of the jeans Defendant was wearing at the | ¿time of his arrest were muddy. Detective Forsythe testified that there was a distance of about 2200 feet between the scene of the shooting and Defendant’s residence. He indicated that the area is wooded with trails and scattered with homes, but “one could move freely through [the] community” without obstruction.
*1088 Detective Forsythe testified that after the search, he arrested Defendant for possession of a firearm by a convicted felon. He stated that he read Defendant his rights, and Defendant refused to talk and requested a lawyer. Detective Forsythe received a report from the ballistics testing of the gun, bullets, and cartridge casings, which stated that the pistol recovered from Defendant’s residence was the gun that fired the bullets and cartridge casings recovered from the crime scene. He stated that he subsequently obtained an arrest warrant for Defendant for attempted second degree murder, arrested Defendant, and read him his rights. According to Detective Forsythe, Defendant questioned him about having a search warrant for the residence, and Detective Forsythe replied that Defendant had previously asked for a lawyer. Detective Forsythe stated that he did not answer Defendant’s questions at that time.
Patrick Lane of the Louisiana State Police Crime Lab was accepted as an expert in firearm identification. Mr. Lane testified that he had performed a comparison of the two bullets and two cartridge cases found at the crime scene and the gun with serial number DSL 1051. He stated that he determined the two bullets and two cartridge cases were fired from the gun with serial number DSL 1051.
Mr. Jackson, the victim of the shooting in this matter, indicated at trial that both he and Defendant were “having relations” with Ms. Washington. He stated that on the night of the shooting, Ms. Washington wanted to come over to his house, but he told her not to come because he was sick of her fighting with Defendant. Mr. Jackson testified that Defendant had been to his home often and Rhad also been in his bedroom. He testified that he and Defendant “had a beef’ about Ms. Washington and “dice games.” Mr. Jackson stated that his “dice game” was more successful than Defendant’s because “the whole neighborhood” loved him more than Defendant. Mr. Jackson indicated that Defendant knew where he slept. He also testified that he had reason to believe that Defendant shot him because Defendant hated him.
Ms. Washington testified that she dated Defendant for three years. She also indicated that Mr. Jackson was her boyfriend. Ms. Washington indicated that her relationship with Defendant was abusive, and he was jealous of anyone she would speak to. She also indicated that Defendant threatened her multiple times. Ms. Washington, along with Mr. Jackson’s stepfather and brother, confirmed that Defendant had been to Mr. Jackson’s residence and had previously been in his bedroom.
At the conclusion of trial on June 10, 2015, the trial court found Defendant guilty of attempted second degree murder and possession of a firearm by a convicted felon. On June 22, 2015, Defendant filed a pro se motion for new trial, which the trial court denied on July 10, 2015.[4]
On September 14, 2015, the trial court sentenced Defendant to imprisonment at hard labor for 50 years on count one to be served without benefit of probation, parole, or suspension of sentence and imprisonment at hard labor for 20 years on count three to be served without benefit of probation, parole, or suspension of sentence. The trial court specified that the sentences were to run consecutively to each other. The trial court also indicated that with regards to count three, Defendant was required to pay a $5,000.00 fine. On September 30, 2015, Defendant filed a motion to reconsider sentence. On December 14, *1089 2015, the trial court conducted a hearing regarding the motion to reconsider sentence. At the | shearing, the trial court denied the motion to reconsider sentence, and Defendant orally noticed his intent to appeal.
On January 8, 2016, Defendant filed a written motion for appeal. The trial court granted the appeal on January 12, 2016. Defendant’s appeal follows.
ASSIGNMENT OF ERROR
Defendant’s sole assignment of error alleges the trial court erred in denying his motion to suppress evidence.
LAW AND ANALYSIS
Defendant alleges that the trial court erred in denying his motion to suppress evidence. Defendant argues that the search of his home without a warrant was objectively unreasonable because the officers failed to request his consent to search the home, although he was present. He claims that he had been living in his grandmother’s house for three years and. had a legitimate expectation of privacy in his bedroom. Instead of obtaining his consent to search his home, Defendant further argues the officers used the arrest warrant as a pretext to arrest him because they had no probable cause to arrest him in the investigation of Mr. Jackson’s shooting.
The State asserts that while Defendant had an expectation of privacy in the residence, he was absent due to a lawful arrest and, therefore, was not in a position to object to the search of his room. Additionally, the State argues that Ms. Gant’s consent to search the trailer provided an exception to the warrant requirement. The State ultimately concludes that the trial court did not err in denying the motion to suppress.
In his written motion to suppress, Defendant argued that the search of his home was unreasonable because the police failed to gain his consent and that the officers removed him because he expressly objected to the police request to search. Defendant’s memorandum goes on to argue about whether the officers |7intentionally removed him to prevent him from voicing an objection. Defendant also challenged whether the consent given to the officers by Ms. Gant was knowing and voluntary. The trial court held the hearing on the motion to suppress which proceeded as follows.
At the hearing on the motion to suppress, Detective Brett Forsythe testified that he worked for the St. James Parish Sheriffs Office. He stated that on May 27,[5] at around 5:08 a.m., he was called to 2157 Church Street in Vacherie. Detective For-sythe indicated that the call related to the shooting of Ansley Jackson. He stated that Mr. Jackson was shot while he was sleeping in his bed. Mr. Jackson was shot once in the right knee, which severed a major artery. Detective Forsythe indicated that there were two bullet holes in Mr. Jackson’s bedroom window. Detective Forsythe testified that he recovered two 9 mm Luger GFL shell casings from the area outside of the window. He stated that he also discovered that Mr. Jackson was having issues “over a female” with Lavell Gant, Defendant.
Detective Forsythe testified that he received Defendant’s information and saw that he had an outstanding warrant for his arrest, issued on December 5, 2013. Detec *1090 tive Forsythe discovered that Defendant’s address was 1218 Old Vacherie Road. He stated that he and other officers went to Defendant’s address. Detective Forsythe indicated that Elizabeth Gant was the owner of the trailer, and one of her children answered the door. Detective Forsythe stated that he asked whether Ms. Gant or Defendant was there. He stated that Defendant came from the rear óf the trailer in a hostile manner and identified himself.
Detective Forsythe testified that Defendant was placed under arrest for the outstanding warrant at that time. He stated that he then spoke to Ms. Gant and found that Defendant did not work or pay rent. Detective Forsythe then asked if' |sshe would be willing to provide consent to search the residence. Detective Forsythe stated that' Ms. Gant consented to the search orally and in writing. He testified that he read the consent form to Ms. Gant, and she indicated that she understood before voluntarily and knowingly giving.her consent to search the residence. Detective Forsythe indicated that he did not coerce her into signing the consent form. He stated that though Defendant was staying at the trailer, he did not get Defendant’s consent to search. .
Detective Forsythe testified that he searched the room Defendant had come out of when the officers first arrived at. the house. He stated that he found a 9mm Smith and Wesson pistol with a black-handle and a silver slide. Detective Forsythe indicated that he also recovered several cigarette butts and a pair of shoes covered in grass. He stated that he also recovered mail with Defendant’s name and the address of the trailer.
Ms. Gant testified that on May 27, 2013,[6] she lived at 1218 Old Vacherie Road. She stated that Defendant lived there, and he had a bedroom and a bathroom. She stated that on that date, Defendant was arrested, and the officers asked to check his room. Ms. Gant said that before signing the consent form, she gave the officers permission to search. She indicated that she had to give, them permission before they could search the room. She stated that she did not realize what she was signing; however, she also indicated that the officer told her what the form was about. Ms. Gant stated that she could have told them “no,” but she did not think it was serious.
At the conclusion of the hearing, Defendant argued the warrantless search of his room which led to the discovery of evidence was unreasonable. Specifically, Defendant claimed that the officers should have asked his permission to search because he had a “privacy right to his room.” He also alleged that the officers |flremoved him for the sake of avoiding his objection. Defendant further asserted that the arrest warrant was not related to the case the officers were investigating. Defendant also contended that Ms. Gant’s consent was neither knowing nor voluntary.
The trial court determined that Ms. Gant was the sole owner of the property. Additionally, the trial court found that she had indicated she understood and gave her consent before the search occurred. Therefore, the trial court denied the motion to suppress evidence.
The Fourth Amendment and Article I § 5 of the Louisiana Constitution protect individuals against unreasonable searches and seizures. State v. Flagg, 99-1004 (La.App. 5 Cir. 4/25/00); 760 So.2d 522, 526, writ denied, 00-1510, (La. 3/9/01); 786 So.2d 117. In an effort to discourage *1091 police misconduct in violation of these standards, evidence recovered as a result of an unconstitutional search and seizure may not be used in a resulting prosecution against the citizen, State v. Tucker, 92-2093, 92-2130 (La. 5/24/93); 626 So.2d 707, 710. The trial court’s denial of a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. Id; State v. Butler, 01-0907 (La.App. 5 Cir. 2/13/02); 812 So.2d 120, 124. In determining whether the trial court’s ruling on a motion to suppress is correct, an appellate court is not limited to the evidence presented at the motion to suppress hearing but also may consider pertinent evidence presented at trial. State v. Sam, 11-469 (La.App. 5 Cir. 2/14/12); 88 So.3d 580, 586, writ denied, 12-0631 (La. 9/12/12); 98 So.3d 301.
Ultimately, the State bears the burden to show that a warrantless search falls within one of the exceptions to the rule that a warrantless search is, per se, unconstitutional. Flagg, 99-1004; 760 So.2d at 526. One such exception is a consent to the search by a third-party when consent is freely and voluntarily given, |]nand the third-party possesses common authority or other sufficient relationship to the premises or effects sought to be inspected. State v. Gomez, 01-717 (La.App. 5 Cir. 11/27/01); 802 So.2d 914, 918 (citing United States v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974)); State v. Edwards, 97-1797 (La. 7/2/99); 750 So.2d 893, 901, cert. denied, 528 U.S. 1026, 120 S.Ct. 542, 145 L.Ed.2d 421 (1999).
Defendant relies . on the Supreme Court’s holding in Georgia v. Randolph, 547 U.S. 103, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006), in arguing his consent was needed for the search of his home. In Randolph, the Supreme Court found that under those particular circumstances presented, a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident could not be justified as reasonable as to him on the basis of a consent given to the police .by another resident. The Court went on to explain, “[I]f a ‘potential’ defendant with self-interest in objecting is in fact at the door and objects, the co-tenant’s permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out.”
Defendant contends that the Court in Randolph suggested in dicta that consent by one occupant may not be sufficient if the police remove the potential objector unreasonably, for the sake of avoiding an objection. However, in this matter, Detective Forsythe testified that there was an outstanding warrant for Defendant’s arrest. Therefore, the arrest was both lawful and reasonable. Furthermore, the Supreme Court in Fernandez v. California, — U.S. —, 134 S.Ct. 1126, 188 L.Ed.2d 25 (2014), clarified the dicta Defendant references from Randolph stating, “an occupant who is absent due to a lawful detention or arrest stands in the same shoes as an occupant who is absent for any other reason.”
Defendant does not, challenge the validity of the arrest warrant itself, he only 11 argues that the use of the unrelated warrant was a pretext for removing him from the premises so that officers could search the residence without objection. This Court has previously determined that once an officer knows of an outstanding arrest warrant, he would be derelict in his duty not to arrest the subject. See State v. Wilson, 11-575 (La.App. 5 Cir. 11/29/11); 79 So.3d 1149, 1153, writ denied, 12-0090 (La. 8/22/12); 97 So.3d 361. Therefore, *1092 upon locating Defendant and having knowledge of the outstanding warrant, the officers would have been derelict in their duties had they failed to arrest Defendant. There was no evidence presented in the record that indicates the officers removed Defendant for the purpose of avoiding an objection to a search. Based on the foregoing, Defendant’s arrest was reasonable, although he was removed from the premises, which could have prohibited him from objecting to a search of the residence. Furthermore, the Supreme Court’s holding in Fernandez directly contradicts Defendant’s argument. Therefore, since Defendant was subject to a lawful arrest, we do not find that the search of the home was tainted by the officers.
It is further noted that in Matlock, supra, the United States Supreme Court made clear that someone who has common authority over a residence, described as “mutual use” and “joint access and control for most purposes,” may consent to a search that is valid as against a co-occupant. Inherent in that analysis, however, is the requirement that the third-party must possess common authority over the residence at issue. In Matlock, the Supreme Court discussed the issue of common authority and noted that it does not automatically flow from the third-party’s property interest in the search area.
Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property with its attendant historical and legal refinements, [citation omitted] but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to | ^permit the inspection in his own right and that the others have assumed the risk one of their number might permit the common area to be searched.
Gomez, 01-717 at 7; 802 So.2d at 918 (citing Matlock, 94 S.Ct. at 993). Nevertheless, in the present matter, the consenting party, Ms. Gant, was the sole owner of the property subject to the search. Ms. Gant herself testified that Defendant did not pay rent, although he had been living at the trailer for years. Therefore, Ms. Gant was the type of co-occupant who could have consented to the search of the property.
In order to rely on consent to justify a warrantless search, the State has the burden of proving that consent was given freely and voluntarily. State v. Joseph, 04-1240 (La.App. 5 Cir. 4/26/05); 901 So.2d 590, 597, writ denied, 05-1700 (La. 2/3/06); 922 So.2d 1176. Voluntariness is a question of fact to be determined by the trial judge under the totality of the circumstances. Id. The trial court determined that Ms. Gant’s consent was free and voluntary. Ms. Gant testified at the suppression hearing that she could have refused consent, but that she did not think it was anything serious. She stated that she gave oral consent before the officers searched Defendant’s room. Additionally, Ms. Gant testified that the officer explained the consent form to her, and she signed it.[7]
*1093 Therefore, the trial court did not err in determining that Ms. Gant had the requisite authority to consent to the search and that her consent was freely and voluntarily given. Based on the foregoing, we find that the trial court did not err in denying Defendant’s motion to suppress.
Error Patent Review
The record was reviewed for errors patent, according to La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975), and State v. Weiland, 556 So.2d 175 (La. App. 5th Cir. 1990). Our review reveals that there are no errors patent.
DECREE
For the foregoing reasons, Defendant’s convictions and sentences are affirmed.
AFFIRMED

. The indictment also included a charge for illegal possession of a stolen firearm in violation of La. R.S. 14:69.1 (count two); however, that matter was nolle prossed.

. Defendant filed a writ of mandamus with this Court, complaining that the trial court had continued his motion to suppress several times and had not ruled on the motion. On May 6, 2015, this Court granted Defendant’s writ application and ordered the trial court to rule on the motion to suppress within 30 days of its ruling. See State v. Gant, 15-250 (La. App. 5 Cir. 5/6/15) (unpublished writ disposition).

. Detective Forsythe indicated that Ms. Gant is Defendant's grandmother.

. Defendant's motion for new trial is stamped as filed on July 10, 2015; however, the order denying the motion for new trial reflects that the trial judge denied it on July 9, 2015.

. It is noted that at this time during the suppression hearing, Detective Forsythe did not specify what year the incident occurred. Nevertheless, later in his testimony, he indicated that the “call to arms,” which documented the dispatch related to this incident, was dated May 27, 2014.

. It appears from the remainder of the testimony at the hearing that Ms. Gant meant 2014, since that is when the search occurred.

. We note that, even if Ms. Gant had not provided written consent, she also provided oral consent to the officers to search the home. This Court has previously held that oral consent is sufficient for a warrantless search. See State v. Gross, 14-110 (La.App. 5 Cir. 6/24/14); 145 So.3d 521, 529, writ denied, 14-1516 (La. 2/27/15); 159 So.3d 1065 (citing State v. Ossey, 446 So.2d 280, 287 n.6 (La. 1984), cert. denied, 469 U.S. 916, 105 S.Ct. 293, 83 L.Ed.2d 228 (1984)).