NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

21-780

STATE OF LOUISIANA

VERSUS

D'MYCAL LMONTAY TURNER

**********

APPEAL FROM THE
THIRTY-FIFTH JUDICIAL DISTRICT COURT
PARISH OF GRANT, NO. 2021-174
HONORABLE WARREN DANIEL WILLETT, DISTRICT JUDGE

**********

SHARON DARVILLE WILSON
JUDGE

**********

Court composed of Shannon J. Gremillion, Candyce G. Perret, and Sharon Darville Wilson, Judges.

AFFIRMED AS AMENDED.

**Annette Fuller Roach**
**Louisiana Appellate Project**
**P. O. Box 6547**
**Lake Charles, LA 70606-6547**
**(337) 436-2900**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**D'Mycal Lmontay Turner**

**Hon. James Patrick Lemoine, District Attorney**
**James D. White, Jr., Assistant District Attorney**
**Thirty-Fifth Judicial District Court**
**200 Main Street**
**Colfax, LA 71417**
**(318) 627-2971**
**COUNSEL FOR APPELLEE:**
**State of Louisiana**

**WILSON, Judge.**

A jury found Defendant, D'Mycal Lmontay Turner, guilty of possession with intent to distribute marijuana and attempted resisting an officer with force or violence. He was subsequently sentenced to serve seven years at hard labor with a $2,500.00 fine for possession with intent to distribute marijuana, and one year with a $500 fine for attempted resisting an officer with force or violence. Mr. Turner was also ordered to pay a $750 fee to the Public Defender's Office. Mr. Turner now appeals his conviction and sentencing. For the reasons expressed below, we amend Mr. Turner's sentence to delete the provision requiring payment to the Public Defender's Office and affirm.

I.

**ISSUES**

In this appeal we must decide:

(1) whether there was insufficient evidence to prove beyond a reasonable doubt that Mr. Turner possessed marijuana with intent to distribute;

(2) whether there was insufficient evidence to prove beyond a reasonable doubt that Mr. Turner attempted to resist an officer with force or violence by injuring or attempting to injure an officer;

(3) whether the trial court committed manifest error when it permitted the state to qualify a detective as an expert in the use, sale, and distribution of a controlled dangerous substance, specifically marijuana, and reversible error occurred when the State used evidence particular to this case to elicit a response from the "expert" that encroached on the issue of guilt or innocence award; and

(4)    whether the sentences imposed by the trial court violate the Eighth Amendment of the Constitution of the United States and La. Const. art. I, § 20, as both upper range sentences are nothing more than cruel and unusual punishment and, thus, excessive.

## II.

## FACTS AND PROCEDURAL HISTORY

On December 22, 2020, Deputy Florey and Deputy Hemphill were attempting to execute an arrest warrant against Mr. Turner for failure to appear in court. After failing to find Mr. Turner at his home, the officers located him at a convenience store with a crowd of people. The officers parked their vehicles and waited in the parking lot so that they could arrest Mr. Turner away from the crowd. At some point Mr. Turner climbed through his car and began walking toward an adjacent lot. The officers drove around to the side where Mr. Turner was located. After Mr. Turner began to run, Deputy Hemphill began chasing Mr. Turner on foot. Mr. Turner appeared to step in a puddle and fall to the ground. Officers then attempted to arrest and handcuff Mr. Turner, and a struggle ensued. After successfully apprehending Mr. Turner, the officers searched his person and recovered two bags of suspected marijuana, a bag containing twelve vials of suspected THC wax, a scale, and approximately $1,800.00 in cash. Mr. Turner was then transferred to the detention center.

On March 9, 2021, Mr. Turner was charged by bill of information with possession with intent to distribute a Schedule I CDS, marijuana, in violation of La.R.S. 40:966(A)(1), and resisting an officer with force or violence, in violation of La.R.S. 14:108.2(A)(3). A jury trial concluded on June 23, 2021, when Mr. Turner was found guilty of possession with intent to distribute marijuana

2

and the responsive verdict of attempted resisting an officer with force or violence. A sentencing hearing was held on September 9, 2021, and Mr. Turner was sentenced to seven years at hard labor with a $2,500.00 fine for possession with intent to distribute marijuana and one year at hard labor with a $500 fine for attempted resisting an officer with force or violence. The sentences were ordered to be served consecutively. Mr. Turner was also ordered to pay costs associated with the proceedings as well as a fee of $750 to the Public Defender's Office.

Following imposition of sentence, defense counsel orally moved for reconsideration of sentence alleging that the sentence was excessive, and the trial court denied the motion to reconsider sentence. Mr. Turner now appeals.

III.

**LAW AND DISCUSSION**

**ERRORS PATENT**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find that there are no errors patent.

**INSUFFICIENT EVIDENCE**

In his first assignment of error, Mr. Turner asserts there was insufficient evidence to prove beyond a reasonable doubt that he possessed marijuana with intent to distribute. While he concedes to the possession of marijuana, he contends the state failed to prove he had an intent to distribute.

Appellate courts must review claims of insufficient evidence using the standard set forth in *Jackson v. Virginia*, 443 U.S. 307; 99 S.Ct. 2781; 61 L.Ed.2d 560 (1979). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found

3

the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. It is the fact finder's role to weigh the evidence and assess credibility, and the appellate court must not second guess their determinations. However, to affirm a conviction, the record must reflect that the state has satisfied its burden of proving the elements beyond a reasonable doubt. *State v. Kennerson*, 96-1518 (La.App. 3 Cir. 5/7/97); 695 So.2d 1367.

Louisiana Revised Statutes 40:966(A)(1) provides that it shall be unlawful for any person to knowingly or intentionally "produce, manufacture, distribute or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance or controlled substance analogue classified in Schedule I." Thus, to prove their case, the state had to prove two elements: (1) Mr. Turner knowingly possessed marijuana (2) with a specific intent to distribute it. Mr. Turner does not contest that he was in possession of marijuana. The question then is if, viewing the evidence in the light most favorable to the prosecution, the state proved beyond a reasonable doubt that Mr. Turner had an intent to distribute the marijuana. "Intent is a condition of mind which is usually proved by evidence of circumstances from which intent may be inferred." *State v. Hearold*, 603 So.2d 731, 735 (La.1992).

In *Hearold*, the supreme court set out five factors to be used in determining whether circumstantial evidence is sufficient to prove the intent to distribute a controlled dangerous substance:

> (1) whether the defendant ever distributed or attempted to distribute the drug; (2) whether the drug was in a form usually associated with possession for distribution to others; (3) whether the amount of drug created an inference of an intent to distribute; (4) whether expert or other testimony established that the amount of drug found in the defendant's possession is inconsistent with

4

personal use only; and (5) whether there was any paraphernalia, such as baggies or scales, evidencing an intent to distribute.

*Id.* We will now apply these factors to determine whether the state met its burden of proving intent to distribute marijuana.

The first factor is whether the defendant ever distributed or attempted to distribute the drug. Based on the evidence admitted at trial, there was no evidence of Mr. Turner ever distributing or attempting to distribute marijuana. None of Mr. Turner's prior arrests were discussed before the jury besides the admission of the bench warrant.

The second factor is whether the drug was in a form usually associated with possession for distribution. In this case, Detective Coleman was qualified as an expert in the use, sale, and distribution of marijuana. He presented testimony that in his experience, marijuana meant for distribution is typically contained in multiple bags weighing around the same size. Here the marijuana was contained in two large bags of similar size. Although the weight of each bag differed by 4.3 grams, detective Coleman testified that they were each about an ounce. In addition, the THC wax was contained in twelve identical vials. Thus, a rational trier of fact could find that the drugs were in a form usually associated with possession for distribution.

The third factor is whether the amount of drug created an inference of an intent to distribute. "In the absence of circumstances from which an intent to distribute may be inferred, mere possession of a drug does not amount to evidence of intent to distribute, unless the quantity is so large that no other inference is possible." *Id.* at 735-36. Moreover, "while the amount of drugs may be relevant in evaluating whether the defendant engaged in possession with the intent to

5

distribute, it is not the determinative factor statutorily. Ultimately, it is the intent to distribute that must be proved regardless of the amount of drugs possessed." *State v. Ellis*, 14-1511, p. 3 (La. 10/14/15), 179 So.3d 586, 588, *cert. denied*, 577 U.S. 1218, 136 S.Ct. 1462 (2016).

In this case, the weight of both bags of marijuana together was 52.567 grams, almost two ounces. In addition, Mr. Turner possessed the twelve vials of THC wax, which together weighed 70.063 grams. Deputy Coleman testified that a single joint contains about two grams of marijuana, so the record shows that Mr. Turner possessed enough loose marijuana for about 25 joints. In *State v. Jack*, 97-351 (La.App. 3 Cir. 10/8/97), 700 So.2d 1177, *writ denied*, 97-2726 (La. 2/13/98), 706 So.2d 993, this court determined that ten baggies of marijuana containing enough to roll a total of thirty to forty hand-rolled cigarettes was not enough to satisfy this factor. In this case however, Mr. Turner also had the twelve vials of THC wax. Carly Desselle was qualified as a forensic drug chemist expert, and she testified that one of the THC wax vials was as potent as one of the bags of marijuana and users typically only use small dabs of the product. The weight of the marijuana in conjunction with the twelve vials of THC wax could create an inference of an intent to distribute; however, intent to distribute need not be determined on this basis alone.

The fourth factor is whether expert or other testimony established that the amount of drug found in the defendant's possession is inconsistent with personal use only. Detective Coleman testified that any amount of marijuana could be considered an amount that could be distributed or kept for personal use, and in making the determination he would look to see what items were found with the marijuana.

6

The fifth and final factor is whether there was any paraphernalia evidencing an intent to distribute. In addition to the two bags of marijuana found in Mr. Turner's pockets, the officers found a bag containing the THC wax vials, a scale, and $1,746.00 in cash. The cash was made up of twenties, fives, and ones. Detective Coleman testified that scales and large sums of money are items he considers in determining distribution, and these items are typically found in distribution cases, but not in personal use cases. Mr. Turner argues that neither the weight alone nor the scale alone proves intent to distribute. Mr. Turner is correct; however, we must consider all of the evidence together and review it under the factors.

When viewing all of the evidence from the record in the light most favorable to the state and considering all of the factors together, we find a rational trier of fact could have concluded beyond a reasonable doubt that Mr. Turner was guilty of possession with intent to distribute marijuana. Therefore, we find that this assignment of error lacks merit.

In his second assignment of error, Mr. Turner asserts that the evidence was insufficient to prove beyond a reasonable doubt that he attempted to resist an officer with force or violence by injuring or attempting to injure an officer. Mr. Turner was charged with resisting an officer with force or violence. Louisiana Revised Statutes 14:108.2 provides:

> A. Resisting a police officer with force or violence is any of the following when the offender has reasonable grounds to believe the victim is a police officer who is arresting, detaining, seizing property, serving process, or is otherwise acting in the performance of his official duty:
>
> . . . .

7

(3) Injuring or attempting to injure a police officer engaged in the performance of his duties as a police officer.

The jury returned a responsive verdict of guilty to attempted resisting an officer with force or violence. Under La.R.S. 14:27(A), attempt is defined as:

Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

Mr. Turner does not contest that he knew the deputies were police officers or that they were attempting to execute a bench warrant. He argues that the state failed to prove he attempted to use force or violence against either officer that evening.

Deputy Hemphill testified concerning the arrest of Mr. Turner and his resistance. He stated that he had an outstanding warrant for Mr. Turner's arrest, and he sought to execute this warrant on the night in question. He testified that he and Deputy Florey were dressed in uniform and driving marked vehicles when they parked next to each other in the store parking lot. He further testified that once they saw Mr. Turner attempt to sneak to a different location, he drove around to intercept Mr. Turner who then began to run. Deputy Hemphill also testified that he eventually turned his overhead lights on and began to chase Mr. Turner on foot. He yelled to Mr. Turner to stop running, but he did not comply. Deputy Hemphill stated that he attempted to subdue Mr. Turner with his taser, but he missed, failing to make contact with both probes. Mr. Turner kept running and fell in a puddle. It was at this point that Deputy Hemphill jumped on top of Mr. Turner to try to

8

subdue him. Deputy Hemphill testified that Mr. Turner attempted to injure him by pushing away from the officer. He testified that Mr. Turner was fighting, shoving, and trying to get away. He further testified that he felt if he did not let go, Mr. Turner would have tried to injure him.

Mr. Turner asserts that Deputy Hemphill's testimony was internally inconsistent as to whether he received any injury that night, and he contends the officer's testimony was contradicted by two eyewitnesses, Donovan Jones and James Ward, who testified that Mr. Turner was tased and fell into a water puddle, so any actions such as shoving while being tased would not satisfy the force or violence element since he lacked intent and acted involuntarily. As the reviewing court, we must afford great deference to a jury's decision to accept or reject the testimony offered by witnesses. When there is conflicting testimony about factual matters, and the resolution of such depends upon a determination of the credibility of the witnesses, it is a matter of the weight of the evidence, not its sufficiency. *State v. Guillory*, 20-353 (La.App. 3 Cir. 5/12/21), 318 So.3d 368.

In the instant case, the jury found Deputy Hemphill's testimony credible and rejected the contradictory testimony of the other witnesses. Deputy Hemphill testified that he missed Mr. Turner with his taser, and when he was on top of Mr. Turner, he felt he was attempting to injure him by constantly pushing hard against him. This testimony, if accepted by the jury, is sufficient to support a factual finding that Mr. Turner attempted to injure a police officer who was engaged in the performance of his duties. Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude beyond a reasonable doubt that Mr. Turner committed the offense of attempted resisting an officer with force or violence. This assignment lacks merit.

9

## EXPERT TESTIMONY

In his third assignment of error, Mr. Turner contends the trial court committed manifest error when it permitted the state to qualify a detective as an expert in the use, sale, and distribution of marijuana and then permitted questioning that went to the issue of guilt or innocence. Specifically, Mr. Turner notes that Detective Coleman had never been tendered as an expert prior to this case and he was not questioned as to his reliability.

We addressed this issue in a similar case, *State v. Wells*, 99-628, (La.App. 3 Cir. 12/22/99) 755 So.2d 963, *writ denied*, 00-181 (La. 9/15/00), 767 So.2d 39. In *Wells*,

> Defendant claims that the court did not apply the gate keeping standard illustrated by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The standard, which was adopted by the Louisiana Supreme Court in *State v. Foret*, 628 So.2d 1116 (La.1993), requires that "expert scientific testimony must rise to a threshold level of reliability in order to be admissible under La.C.E. art. 702." Id. at 1123. The Supreme Court recently elaborated on the *Daubert* standard in *Kumho Tire Company, Ltd., et al. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), stating that the gate keeping obligation applies to all expert testimony, as well as scientific testimony.

> Defendant argues that the criteria for Lieutenant Coutee to be qualified as an expert were not met because he had not written articles or taught courses in the field and had never been qualified as an expert before. Defendant maintains that Lieutenant Coutee could not testify as to the consumption habits of cocaine users because he testified that he had never been present when cocaine was consumed.

> This court has stated in a civil matter that "experience alone is sufficient to qualify a witness as an expert; a college degree is not required." *State Thru DOTD v. Wahlder*, 94–761 (La.App. 3 Cir. 12/7/94); 647

So.2d 481, 485. *See also Manchack v. Willamette Industries, Inc.,* 621 So.2d 649 (La.App. 2 Cir.), *writ denied,* 629 So.2d 1170 (La.1993). Furthermore, the "competency of an expert witness is a question of fact within the sound discretion of the trial judge. His assessment of the qualifications of experts will not be disturbed unless clearly wrong." *Wahlder,* 647 So.2d at 485.

Lieutenant Coutee had been a police officer for twenty-three years and had worked as a narcotics investigator/supervisor for more than ten years. As an investigator, his duties involved participation in actual investigations. Lieutenant Coutee received extensive training at annual conferences of the Louisiana Sheriff's Association Narcotics Task Force and the Louisiana Narcotics Officers Association. He testified about his involvement in an organized crime drug enforcement task force with the drug enforcement administration and that he had been assigned to a task force officer with the Federal Bureau of Investigation, investigating narcotics activity throughout the state and other states. Lieutenant Coutee also received training from the United States Justice Department relating to narcotics investigations. He attended the Louisiana State University Law Enforcement Institute and has attended numerous classes and conferences relating to narcotics activities and investigations.

Lieutenant Coutee testified that about seventy-five percent of his personal involvement in drug investigation deals with cocaine, and that ninety percent of the cocaine investigations involve the crack form of cocaine. He estimated that he personally investigated 200 to 300 cases involving the distribution, the packaging for distribution and the holding for sale or distribution of crack cocaine and has supervised in excess of 300 investigations. From this foundation, Lieutenant Coutee was tendered as an expert in the area of distribution, packaging for distribution, and manufacture for distribution of crack cocaine and was received and qualified as such by the court. We conclude that Lieutenant Coutee's experience alone was sufficient to qualify him as an expert in the field of distribution, packaging, and manufacturing of crack cocaine, and that his experience encompassed the consumption habits of cocaine users.

*Id.* at 968.

In the instant case, Detective Coleman testified that he started with the Grant Parish Sheriff's Office in 2005 and has been on the force for sixteen years. He testified that he completed post certification, which included classroom education on Title 40 involving narcotics. He testified that over the years he has specialized more in narcotics investigations and that he is considered a narcotics officer for the department, working specifically in narcotics for over ten years. He has worked as an investigator and canine handler. He testified that he has taken several specific classes and trainings on narcotics. Detective Coleman also testified that he probably works two to three narcotics cases per week and over a hundred a year. He estimates that 1,500 would be a fair and close estimate of narcotics cases he has worked in his career. He further testified that investigation of marijuana cases is something he routinely does as part of his job, and over half of his narcotics cases involve marijuana or marijuana found with other narcotics.

The trial court found that based on Detective Coleman's sixteen years as an officer, his trainings and other education, his ten-year focus on narcotics investigations, and that over half of his approximately 100 narcotic cases per year involve marijuana, the officer would be of assistance to the jury. The competency of an expert witness is a question of fact within the sound discretion of the trial judge, and this assessment should not be disturbed unless the trial court clearly abused such discretion.

Based on the testimony, Detective Coleman has handled approximately 750 cases that involve marijuana. In *Wells*, 755 So.2d 963, this court noted Lieutenant Coutee estimated that he personally investigated 200 to 300 cases involving distribution, the packaging for distribution, and the holding for sale or distribution of crack cocaine, and had supervised more than 300 investigations.

12

This court concluded that Lieutenant Coutee's experience alone was sufficient to qualify him as an expert in the field of distribution, packaging, and manufacturing of crack cocaine, and that his experience encompassed the consumption habits of cocaine users. In the instant case, Detective Coleman testified that his marijuana investigations involved the use, distribution, possession with intent, cultivation, and production of marijuana. We find that the officer's training and experience were sufficient to qualify him as an expert in the use, sale, and distribution of marijuana. Therefore, the trial court did not commit manifest error in qualifying Detective Coleman as an expert witness.

Mr. Turner also asserts that the prosecutor's questions about the facts of the case and Detective Coleman's answers to those questions usurped the jury's function as finders of fact and constituted reversable error. Louisiana Code of Evidence Article 704 provides that "in a criminal case, an expert witness shall not express an opinion as to the guilt or innocence of the accused." This prohibition also applies when the opinion is solicited through the presentation of a hypothetical situation. *State v. Deal*, 00-434 (La. 11/28/01), 802 So.2d 1254, *cert. denied*, 537 U.S. 828, 123 S.Ct. 124 (2002). When a witness makes an irrelevant remark that could prejudice the defendant, La.Code Crim.P. art. 771 gives the trial court the option to admonish the jury. *State v. Ducre*, 01-2778 (La. 9/13/02), 827 So.2d 1120. If an admonition does not appear to be sufficient, the trial court may declare a mistrial, but mistrial is a drastic remedy, which should only be used upon a clear showing of prejudice by the defendant. *Id.* The trial judge has broad discretion in determining whether conduct is so prejudicial as to deprive the accused of a fair trial. *Id.*

13

The fifth circuit court addressed a similar claim in *State v. Gross*, 14-110 (La.App. 5 Cir. 6/24/14), 145 So.3d 521, *writ denied*, 14-1516 (La. 2/27/15), 159 So.3d 1065. In *Gross*, the expert witness, Sergeant Modica, was shown the plastic bag of marijuana seized from defendant's vehicle and asked if he had ever seen marijuana packaged in that manner. Sergeant Modica responded that marijuana packaged in that manner would be indicative of someone who possessed it with the intent to distribute. The state then presented Sergeant Modica with a photograph of the apartment complex where defendant was located prior to arrest and posed a hypothetical that tracked the facts of the case from the arresting officer's testimony. Sergeant Modica testified that based on the facts, he would suspect a street-level drug transaction went down. Defense counsel objected to this testimony and moved for a mistrial, which was denied. The defendant asserted that the testimony was "equivalent to a direct statement by Sergeant Modica that defendant distributed drugs and such testimony is tantamount to an opinion on the ultimate issue regarding his guilt for the charged offense." *Id.* at 531. The court held,

> we again find that the prosecutor's questions mirrored the specific facts of the case, which again caused the expert witness to come too close to commenting on the ultimate issue of guilt, which is the sole purview of the trier of fact. Finding that the testimony was improper under La. C.E. art. 704, we must determine whether the trial court committed reversible error in denying defendant's motions for mistrial.

*Id.* at 532.

In the instant case, Mr. Turner claims that it amounted to reversible error when the prosecutor asked Detective Coleman to examine the evidence in the case and asked whether the amount and sizes of the bags would be consistent with

14

personal use. Detective Coleman answered that the way the marijuana was packaged would not be consistent with personal use. We find that the state's questioning and Detective Coleman's answer about whether the evidence is consistent with personal use comes too close to commenting on the ultimate issue of guilt, which is in the sole purview of the trier of fact. Thus, we must determine whether the trial court committed reversible error in failing to admonish the jury or grant a mistrial. In *Gross*, 145 So.3d 521, the court noted that although the trial court did not admonish the jurors at the time of the testimony, the trial court did instruct the jurors before deliberation as follows:

> Although you are the sole judges of the facts on the question of guilty or innocent, you have the duty to accept and apply the law as given to you by the Court. You must decide the facts from the testimony and other evidence and apply the law to those facts in reaching your verdict.

*Id.*, at 532. The trial court also instructed the jury on the law with respect to expert witnesses prior to Sergeant Modica's testimony and at the conclusion of trial. The court held that, based on their review of the record, they could not say that Sergeant Modica's comments were so prejudicial as to warrant a mistrial based on the substantial evidence of his guilt presented at trial. *Id.*

In the instant case, the trial court did not admonish the jury, but it provided the jury with a similar set of instructions advising them that: the jury was the sole judges of the law and the facts on the question of guilt or innocence; the jury must decide the facts from the testimony and other evidence, and apply the law to those facts in reaching a verdict; the jurors alone determine the weight and credibility of the evidence; as the sole judges of the credibility of witnesses and of the weight their testimony deserves, the jury should scrutinize carefully the

15

testimony and the circumstances under which the witness testified; the jury must consider any reasons a witness may testify in favor of the state and the extent to which the testimony is supported or contradicted. The trial court also instructed the jury as follows:

> Police officials have testified in this case, I charge you that you must determine the credibility of police officials in the same way and by the same standards as that you would evaluate the testimony of any ordinary witness. You may not presume police officers or other people in official positions to be more truthful or less truthful than anyone else.
>
> . . . .
>
> You should consider each expert opinion received into evidence in this case and give it such weight as you think it deserves. If you should . . . decide that the opinion of an expert witness is not based on sufficient education or experience or if you should conclude that the reasons given in support [of] the opinion are not sound or if you feel that it is outweighed by other evidence, you may disregard the onion entirely.

After defense counsel objected to Detective Coleman's testimony, the trial court held a bench conference outside the presence of the jury and discussed the issue but determined that the objection was moot. A mistrial is drastic and should only be declared upon a clear showing of prejudice. *State v. Ducre*, 827 So.2d 1120. In assessing prejudice, we now look the record. At trial, Officer Hemphill testified that before apprehending Mr. Turner, he noticed Mr. Turner back his car to the edge of a nearby lot where another vehicle pulled up. At this point Mr. Turner walked over to the backseat of his vehicle, crossed over the backseat and exited out of the passenger back door moving towards the car that had pulled up. As Mr. Turner was attempting to sneak away, the officers moved to intercept him and then gave chase. Along with this suspicious behavior, officers

found on Mr. Turner's person two similarly sized bags of marijuana weighing approximately one ounce each; twelve THC wax vials; $1,746.00 in cash; and a scale. In light of the evidence adduced at trial, along with the extensive jury instructions, particularly about police officers and the possibility to disregard expert testimony, we find that the trial court's instructions were sufficient to counteract any influence caused by Detective Coleman's testimony. Therefore, the state's questioning and Detective Coleman's answers about personal use amount to harmless error.

## EXCESSIVE SENTENCE

In his last assignment of error, Mr. Turner asserts that his two sentences are excessive not only because of the length of each sentence, but also because the court ordered the two sentences to be served consecutively. Mr. Turner contends that considering his young age, lack of prior felony convictions, work history, and family history, lesser sentences were warranted. He also asserts that the trial court improperly imposed a fee to the Public Defender's Office even though no portion of his sentences were suspended, and he was not placed on probation. Louisiana courts have laid out the following guidelines regarding excessive sentence review:

> Sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979). In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La.2/1/02), 808 So.2d 331, a panel of this court discussed the review of excessive sentence claims, stating:

> > La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an

17

excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, writ denied, 00-0165 (La.6/30/00)00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

Further, in reviewing the defendant's sentences, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57 (citing *State v. Telsee*, 425 So.2d 1251 (La.1983)), *writ denied*, 99-433 (La.6/25/99), 745 So.2d 1183. In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La.5/30/03), 845 So.2d 1061, a panel of this court observed that:

> While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, 958[, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615 (1996)].

*State v. Soileau*, 13-770, 771, pp. 4-5 (La.App. 3 Cir. 2/12/14), 153 So.3d 1002, 1005-06, *writ denied*, 14-452 (La. 9/26/14), 149 So.3d 261.

Mr. Turner was sentenced to serve seven years at hard labor and pay a $2,500 fine for possession of marijuana with intent to distribute. He was sentenced to serve one year at hard labor and pay a $500 fine for attempted resisting a police officer by force or violence. The sentences were ordered to be served consecutively, and he was ordered to pay a fee to the Public Defender's Office. Under La.R.S. 40:966(B)(2)(a) the sentencing range for possession of marijuana with intent to distribute with an aggregate weight of less than two-and-one-half pounds is imprisonment, with or without hard labor, for not less than one year nor more than ten years, and a fine of not more than $50,000. The sentencing range for attempted resisting a police officer by force or violence under La.R.S. 14:27 and 14:108.2 is a fine of not more than $1,000 or imprisonment with or without hard labor for not less than half a year but not more than one and a half years, or both. For each sentence, me must consider it light of the *Lisotta*, 726 So.2d 57, factors.

The first factor is the nature of the crime. The crime of possession with the intent to distribute marijuana involves distributions of drugs within the community and is not a crime of violence. *See* La.R.S. 14:2(B).

The second factor looks to the nature and background of the defendant. At the hearing, the trial court allowed Mr. Turner to make a personal statement and he stated the following:

> Yes, sir, . . . I'd like to say. . . I'm sorry to you and the D.A., and I apologize, and I thank y'all for (inaudible) me down, and (indistinct), and make me realize this ain't what I want to do, I want to be out there with my family, and my kids, and supporting them, and this ain't. . . nothing for anybody, like . . . nobody wants to do this

19

like, I'll tell anybody that, jail ain't for nobody if you got a family especially the young ones that you have to provide for, and I'd like to provide the right way, and get a job, I'll tell you I'll be able to get one next week. (Indistinct) I'll ask y'all if I can go no and take probation, and go provide for my family, (indistinct) and my two kids because she's doing this by herself. It doesn't matter what you give me, you can give me anything, any kind of probation. . . .

The pre-sentencing investigation report contained Mr. Turner's criminal history, which included:

[O]n August 14th, 2017, you were arrested by the Grant Parish Sheriff's Office for Possession of Marijuana, Possession of Drug Paraphernalia. There was no disposition of those charges found.

September 16th of 2017, Leesville Police Department, Speeding, and Operating While your License was Suspended, no record or disposition was found.

April 19th of 2018, an arrest by Grant Parish Sheriff's Office for Contempt, and being a Fugitive. No record was found of the disposition.

April 23rd of 2018, an arrest by Leesville Police Department for Contempt, Failure to Appear for Speeding and Contempt for Failure to Appear for Suspended License. No record of disposition was found.

March 15th of 2020, Grant Parish Sheriff's arrest for Intent - - Possession with Intent to Distribute Alprazolam. Possession with Intent to Distribute Hydrocodone. Possession with Intent to Distribute Marijuana, Possession of CDS IV, Possession of CDS II, and Possession with Intent, Marijuana, uh, you have previously entered pleas of not guilty on those matters, and they are still pending.

. . . .

August 20th of 2020, Grant Parish Sheriff's arrest for Illegal Possession of a Stolen Firearm, Possession of CDS I, Possession of CDS II, those charges are in Docket #20-661, you've entered a plea of not guilty on those charges, and those matters are still pending.

20

December 22nd, 2020, an arrest by Grant Parish Sheriff's Office for Contempt, Possession of CDS I With Intent, Possession of CDS I With Intent, and Resisting An Officer with Force or Violence, those are the charges that you were tried on, and are standing for sentencing today.

An arrest on February 14th of 2021 for Possession With Intent to Distribute Marijuana, you've entered a plea of not guilty on that charge, that is still pending.

June 23rd of 2021, the Jury Tampering arrest by Grant Parish, that matter is in Docket #21-767, that matter is set for arraignment on September 17th, 2021.

The report also showed that Mr. Turner was the youngest child, that he was primarily raised by his mother, and that he attended Montgomery High School but did not graduate or obtain a G.E.D. The report further noted that Mr. Turner had no religious preferences, and he smokes weed but is not a big drinker due to his father passing away from drunk driving. With respect to employment, Mr. Turner had worked six months pouring cement and had also worked for U.S. Lawns. He has skills in fencing, pouring concrete, packing boxes, and landscaping, and he intends to work at Hunt Plywood following his release. Mr. Turner is married, has two children, and intends to reside in Colfax. In imposing sentence, the trial court stated that Mr. Turner's young age, marital status, and children were mitigating factors. However, the trial court noted that Mr. Turner's numerous pending felony drug charges are an aggravating circumstance. Of note was the fact he was arrested twice over a four-day trial, with one charge involving jury tampering.

The final factor is a comparison of the sentences imposed for similar crimes. Because the penalty provisions were amended in 2017, the cases that are closer to this sentencing range involve attempted possession of marijuana with intent to distribute.

21

In *State v. Breaux*, 18-690 (La.App. 3 Cir. 3/7/19), 269 So.3d 938, the defendant was originally charged with one count of possession with intent to distribute marijuana, one count of cultivation of marijuana, and one count of illegal carrying of a weapon while in the possession of drugs. Upon searching the defendant's home, detectives found five marijuana plants, 67.93 grams of marijuana, an assault rifle, a grinder with marijuana residue, and other paraphernalia. Defendant altered his plea and pled guilty to the amended charge of one count of attempted possession with intent to distribute marijuana. The sentencing range for attempted possession of marijuana with intent to distribute was zero to fifteen years, and the defendant was sentenced to eight years for attempted possession with intent to distribute. This court upheld the sentence and found it to be in line with other sentences. *Id.*

In *State v. Brown*, 02-1382 (La.App. 3 Cir. 4/2/03), 842 So.2d 1181, *writ denied*, 03-1224 (La. 11/7/03), 857 So.2d 491, this court determined that a five-year sentence at hard labor for attempted possession with intent to distribute marijuana was not excessive. In that case, the defendant, a paraplegic first-offender, benefited from a plea bargain, and the State amended the charge from the original charge of possession with intent to distribute marijuana, and the defendant's sentence exposure decreased from a potential thirty years at hard labor to fifteen years at hard labor. However, the amount of marijuana found in this case was twenty-eight pounds.

In *State v. Purvis*, 51,215 (La.App. 2 Cir. 4/5/17), 217 So.3d 620, the second circuit affirmed a fifteen-year sentence for possession with intent to distribute marijuana. The second circuit noted that a person convicted of possession with intent to distribute marijuana could be imprisoned for not less than

five years and no more than thirty years. The defendant was found with fourteen individual bags of marijuana that had a total weight of twenty-eight grams. At sentencing, the trial court noted Purvis was previously convicted of illegal use of a weapon in 2007, attempted possession with intent to distribute in 2008, and illegal use of a firearm in 2014. Despite his criminal record, Purvis argued he was remorseful for his actions and could be rehabilitated. However, the trial court stated that regardless of Purvis' remorse, it could not ignore Purvis' previous record and concluded Purvis was in need of correctional treatment in a custodial environment. In affirming the sentence, the second circuit noted that considering Purvis' previous criminal history, the trial court did not abuse its discretion.

In light of the above case law, we cannot say that the trial court abused its broad discretion in sentencing Mr. Turner to seven years at hard labor with a $2,500 fine. Mr. Turner asserts the trial court's comments, that if he were resolving all of his charges on the day of sentencing, then the court might look at the pending charges differently as well as the comment that he continued to deny responsibility for distributing drugs, were inappropriate and should not have affected the sentencing choice. However, in *State v. Williams*, 96-37, p. 8 (La.App. 3 Cir. 6/26/96), 677 So.2d 692, 697, this court stated:

> In *State v. Berry*, 630 So.2d 1330, 1335 (La.App. 4 Cir.1993), the court stated, "[t]he Louisiana Supreme Court held a trial court could consider unadjudicated criminal activity in sentencing." The court, citing *State v. Bouie*, 532 So.2d 791, 793 (La.App. 4 Cir.1988), further stated, "we reiterated that a trial court may consider both arrests and convictions in imposing sentence, provided the defendant 'is given notice of the information and is afforded a chance to speak in mitigation.'" *Berry*, 630 So.2d at 1335. In [*State v.* ]Stein, 611 So.2d [800,] 802, this court stated:

> However, in selecting a proper sentence, a trial judge is not limited to considering only a defendant's prior convictions and may properly review all criminal activity. . . . The trial judge may consider whatever factors and evidence he deems important to a determination of the best interest of the public and the defendant. (citation omitted).

Mr. Turner had notice that the trial court was considering all of his criminal history and was allowed to speak at the hearing in mitigation. Thus, Mr. Turner's argument that the trial court's comments were inappropriate is without merit since the court may consider all criminal activity and whatever factors and evidence deemed important. The trial court found Mr. Turner's past drug-related arrests, lack of remorse, and continued denial of responsibility to be aggravating factors. A trial court is given wide discretion in imposing a sentence, and a sentence imposed within the statutory limits will not be deemed excessive in the absence of manifest abuse of discretion. *State v. Howard*, 414 So.2d 1210 (La.1982).

We find that Mr. Turner's seven-year sentence for possession of marijuana with intent to distribute is not excessive.

Considering Mr. Turner's conviction for attempted resisting and officer by force or violence, we must first consider the nature of the crime. The conviction constitutes a crime of violence with a maximum of one-and-a-half years at hard labor and/or a fine of up to $1,000. The nature and background of Mr. Turner has been discussed thoroughly above.

We now look to similar cases to consider whether Mr. Turner's one year sentence was excessive. In *State v. McCauley*, 48,321 (La.App. 2 Cir. 8/7/13), 122 So.3d 596, the defendant was found guilty of resisting an officer with

24

force or violence, and he was sentenced to two years at hard labor. In imposing this sentence, the trial court noted that it considered the defendant's criminal history, which included pleading guilty to threatening a public officer; a letter from Defendant's mother; and Defendant's apology and request for leniency. The trial court noted that the defendant could have been charged with three counts of resisting by force or violence, since the incident involved three police officers and occurred over four hours. The trial court stated that it was originally going to impose the three-year maximum sentence, but upon hearing the defendant's apology, reduced the sentence to two years. The second circuit affirmed the sentence and noted that the defendant's behavior was more than a mild resistance to an arrest, since he resisted over the course of several hours and was restrained by more than just handcuffs. The second circuit also considered the defendant's past criminal history in affirming the sentence.

In *State v. Walker*, 48,502 (La.App. 2 Cir. 11/20/13), 128 So.3d 619, the defendant was sentenced to two years at hard labor for resisting a police officer with force of violence. In imposing the sentence, the trial court noted the defendant was driving while drunk, the defendant had been arrested forty-two times, the defendant had eight prior felony convictions, there were several actions of aggression toward law enforcement, and the defendant could have been adjudicated as a fourth felony offender and exposed to a minimum of twenty years. The second circuit affirmed the sentence based on the defendant's prior criminal history.

In *State v. Miller*, 49,234 (La.App. 2 Cir. 8/20/14), 147 So.3d 1201, the defendant was sentenced to two-and-a-half years for resisting an officer with force or violence. The arresting officer indicated that the defendant was stopped

for speeding, and the officer noted the odor of alcohol on her breath. Upon refusing to participate in field sobriety tests, the defendant was placed under arrest. The defendant refused to be peacefully arrested and attempted to break one of the patrol unit's windows with her head. During transport, the defendant was kicking the partition inside the vehicle. In affirming the sentence, the second circuit noted the trial court considered the defendant's mental history as a mitigating factor but balanced it against her aggressive actions and lengthy criminal history.

Additionally, in *State v. Musacchia*, 13-169 (La.App. 5 Cir. 12/12/13), 131 So.3d 286, the defendant physically resisted and took a swing at the officer with a closed fist, and the defendant and officer physically struggled on the ground until another officer tased defendant. The defendant was convicted of attempted resisting a police officer with force or violence and was sentenced to a one-year suspended sentence at hard labor with credit for time served and further imposed upon the defendant five years of probation. In *State v. Turner*, 51,228 (La.App. 2 Cir. 4/5/17), 217 So.3d 601, the defendant struggled with the officer. Although he did not swing at the officer, he did jerk his right hand away while the officer attempted to arrest him. While the defendant was struggling to keep his right arm from the officer, his left arm was flailing around with the open cuff attached to it. The defendant was convicted of attempted resisting a police officer with force or violence, and he was sentenced to serve one year at hard labor, suspended, two years of supervised probation, and was given a $750 fine or six months in jail in default of payment. However, we note that excessiveness of the sentence was not raised as an assignment in these cases.

In all these cases the defendants were largely given sentences below the maximum amount. In several of the resisting arrest cases, the defendants were

26

given two-year sentences out of a maximum of three years. Two years is approximately 66.6% of the three years allowed under the sentencing statute. Similarly, in the instant case, Mr. Turner was sentenced to one year out of a maximum sentence of one-and-a-half years for the attempted resisting an officer with force or violence. One year also reflects the same percentage, 66.6%, of the total amount of years allowed under the sentence statute for an attempt. The trial court thoroughly considered the aggravating and mitigating factors and ultimately decided to impose this sentence based on Mr. Turner's lengthy criminal history. A trial court is given wide discretion in imposing a sentence, and this court does not find a manifest abuse of discretion in imposing the sentence for attempted resisting an officer with force or violence.

As to the consecutive nature of the sentences, while the consecutive nature was mentioned in Mr. Turner's brief, he provided no argument or analysis for this claim. Furthermore, the consecutive nature of the sentences was not raised in Mr. Turner's motion to reconsider sentence. Under La.Code Crim.P. art. 881.1(E), the failure "to include a specific ground upon which a motion to reconsider sentence may be based. . . shall preclude the defendant from urging any ground not raised in the motion on appeal or review." Therefore, this court need not address Mr. Turner's claim about the excessiveness of his consecutive sentences.

Lastly, Mr. Turner asserts his sentences are excessive because the trial court imposed fines, court costs, and a payment to the Public Defender's office even though no portion of the sentences was suspended nor was he placed on probation. Along with Mr. Turner's seven-year sentence for possession of marijuana with intent to distribute, he was ordered to pay a $2,500 fine. Under

27

La.R.S. 40:966(B)(2)(a), a fine not to exceed $50,000 may be imposed. Additionally, Mr. Turner was fined $500, along with his one-year sentence, for attempted resisting an officer with force or violence. Under the statute, the fine was not to exceed $1,000. The fines are supported by the record. The trial court properly considered Mr. Turner's criminal history and other mitigating factors. Additionally, the $2,500 fine is considerably less than the maximum amount allowed, and the $500 fine was half of the maximum allowed, so the fines in both sentences were toward the lower end.

Along with his argument about the fines, Mr. Turner contends that the trial court improperly imposed court costs as part of his overall sentence. We look to this court's opinion in *State v. Allen*, 09-1281, pp. 5-6 (La.App. 3 Cir. 5/5/10), 36 So.3d 1091, 1095 (footnote omitted), for an analogous result:

> Allen argues that he is indigent, and, thus, the imposition of a $2,000.00 fine was not appropriate. In support, Allen refers to *State v. Perry*, 472 So.2d 344 (La.App. 3 Cir.1985). There, a defendant who pled guilty to attempted distribution of a counterfeit schedule II controlled dangerous substance was found indigent by the trial court and was appointed counsel for his defense. In addition to four years of imprisonment at hard labor, an upper-range sentence, the trial court imposed a $5,000.00 fine and court costs, or, in default of paying the fine, imposed an additional year of imprisonment. This court found that sentence excessive.
>
> Relying on *State v. Mims*, 550 So.2d 760 (La.App. 2 Cir.1989), the State argues that consideration of Allen's ability to pay the fine is premature. In *Mims*, the court discussed the consideration of default jail time before a defendant is required to pay a fine and concluded that such consideration was premature.
>
> The issue in *Perry* and in *Mims* regarding fines was the default jail time, not that the indigent defendant was ordered to pay a fine. Further, in *Perry*, the jail time and fine were both excessive because the trial judge failed to state for the record the considerations and facts upon which the sentence was based.
>
> This court was unable to find any jurisprudence which prohibits or limits the trial court's imposition of a fine on an indigent defendant.

Moreover, although the ruling in *Mims* is distinguishable from this case, it does suggest that considering a defendant's indigence prior to the time he is called upon to pay the fine is premature.

As noted above, Allen's $2,000.00 fine was less than one-half of the maximum possible fine. Also, the trial court clearly stated for the record the facts it considered in determining Allen's sentence. Finally, the trial court did not order default time in the event Allen did not pay his fine. For these reasons, Allen's fine is not excessive.

The instant case is analogous to *Allen* in that the court did not order default time in the event that Defendant did not pay his court costs, and the trial court clearly stated for the record the facts it considered in determining Mr. Turner's sentence. Therefore, the trial court's order of payment of court costs is not excessive.

As to the $750 payment to the Public Defender's office, we turn to this court's opinion in *State v. Belton*, 11-948, pp. 3-4 (La.App. 3 Cir. 3/7/12), 88 So.3d 1159, 1162:

Louisiana Code of Criminal Procedure Article 895.1 provides, in pertinent part:

B. When a court suspends the imposition or the execution of a sentence and places the defendant on probation, it may in its discretion, order placed, as a condition of probation, an amount of money to be paid by the defendant to any or all of the following:

(1) To the indigent defender program for that court.

(2) To the criminal court fund to defray the costs of operation of that court.

(3) To the sheriff and clerk of court for costs incurred.

(4) To a law enforcement agency for the reasonable costs incurred in arresting the defendant, in felony cases involving the distribution of or intent to distribute controlled dangerous substances.

In this case, the trial court did not suspend imposition or execution of Defendant's sentence and place him on probation; therefore, we find that the trial court lacked authority to order payment to the Public Defender's Office as part of the principal

29

sentence. Accordingly, we amend Defendant's sentence, deleting the $500.00 fine and costs and the provision requiring the $500.00 payment to the Public Defender's Office. The trial court is instructed to note the amendment in its court minutes.

As in *Belton*, the trial court did not suspend imposition of sentence or place him on probation. Therefore, we find that the trial court lacked authority to order payment to the Public Defender's office, and we amend the sentence to delete that provision.

V.

## <u>CONCLUSION</u>

For the foregoing reasons, Mr. Turner's convictions and sentences for possession with the intent to distribute marijuana and attempted resisting an officer by force or violence are affirmed. Mr. Turner's sentence, however, is amended to delete the provision requiring payment to the Public Defender's Office. Costs of this appeal are assessed to Mr. Turner.

**AFFIRMED AS AMENDED.**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION.
Rule 2-16.3 Uniform Rules, Courts of Appeal.